SEEFELD, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*October 13 — November 3, 1886.*

RAILROADS: CONDEMNATION OF LAND. *(1, 2) Evidence of value: Consideration expressed in deeds of other lands. (2, 4) Awards of commissioners as evidence. (3) Purpose of view. (5) Interest.*

1. In proceedings to condemn land for a railroad, the recitals, in conveyances to which the railroad company was a stranger, of the consideration paid for other lands in the vicinity, are not admissible to show the value of such lands or of the land sought to be condemned.

2. Nor are such recitals admissible even when the conveyances were made to the company, if the consideration expressed in each is the amount awarded by commissioners of appraisal in condemnation proceedings.

3. In proceedings to condemn land the only office of a view is to enable the jury to determine the weight of conflicting testimony respecting value and damage; and instructions from which the jury might have understood that they might rest their verdict upon

Seefeld vs. Chicago, Milwaukee & St. Paul R. Co.

their knowledge of the land acquired by the view, even though their judgment was not sustained by the evidence, are *held* erroneous.

4. Upon an appeal from the award of the commissioners, it is error to permit the notice of appeal to be read to the jury for the purpose of informing them what sum the commissioners awarded. Whether such error would, of itself, work a reversal of the judgment, not determined.

5. *Uniacke v. C., M. & St. P. R. Co., post*, p. 108 (as to interest upon the sum awarded by the jury from the filing of the award of the commissioners), followed.

APPEAL from the Circuit Court for *Milwaukee* County.

This is an action brought by the appellant to condemn lot 12, block 75, in the Fourth ward of the city of Milwaukee, for railroad purposes. A large number of other condemnations were included in the same proceeding.

Commissioners were duly appointed, and filed their report on the 15th day of August, 1885, awarding to the respondent the sum of $10,500, which amount was paid into court on the 12th day of October, 1885, for the use and benefit of the respondent, and on the 25th day of August he appealed to the circuit court. The cause was tried on the 27th day of October, 1885. After the jury was sworn a view of the premises was had. On the trial of the cause a verdict was returned for the respondent for the sum of $12,987.50, and the further sum of $189.37 interest from date of filing the award to date of verdict, amounting in all to the sum of $13,176.87. A motion to set aside said verdict and for a new trial was made and denied, and afterwards, and on the 6th day of January, 1886, judgment was entered upon said verdict for the amount thereof, and the additional sum of $174.21 interest thereon from the time of the trial, and the sum of $46.68 costs, amounting in all to the sum of $13,397.76. From said judgment this appeal is taken by the defendant company.

*John W. Cary,* for the appellant.

For the respondent there was a brief by *Markham &
Noyes,* and oral argument by *Mr. Noyes.*

LYON, J.  1. For the purpose of proving the value of the
lot in question, the plaintiff offered and the circuit court,
against the objection of the defendant company, admitted
in evidence the record of five deeds of as many lots in the
same neighborhood, executed in 1885 by different grantors
to John W. Cary; and of another deed of another lot, exe-
cuted in 1884 by one Markham to one Thorson.  Each of
these deeds expressed a consideration, and they were re-
ceived in evidence on the theory that the consideration
thus expressed proved the price paid for each lot, and
tended to show the value thereof, and, by inference, the
value of the lot in question.

On their face the railway company was a stranger to
these conveyances, and was not bound by the recitals therein
of the consideration paid.  Such recitals are nothing more
than *ex parte* statements of the grantors and grantees that
the considerations named were paid and received for the
respective lots.  As between the parties thereto each of
these conveyances would be evidence of the consideration
paid and received, because it is an admission of the fact by
all parties to it.  But it is not conclusive evidence.  Either
party may show that the true consideration was greater or
less than that named in the deed, just as a party may al-
ways deny, explain, or controvert his alleged admissions
against his own interest, unless they create an estoppel.
As to a stranger to the deed, however, such evidence is
purely hearsay.  It is precisely the same in this case as it
would have been had the plaintiff put a witness on the
stand, and, for the purpose of proving the value of the lot
in question, interrogated him as to the statements and ad-
missions of any grantor or grantee of a lot in the same
vicinity of the sum paid and accepted therefor.  No one

will maintain for a moment that such evidence is admissible. We think the records of the conveyances above mentioned are equally inadmissible, and for the same reasons.

It appeared later in the trial that the deeds to Mr. Cary were made for the railway company, and that the consideration expressed in each of them was the 'sum at which the lot conveyed had been appraised by commissioners in condemnation proceedings. Had that fact been developed when the records of those deeds were put in evidence, they would prove only the opinion of the commissioners of the value of the several lots. It would still be hearsay evidence and incompetent. If the plaintiff desired to get the opinion of the commissioners to the jury, he should have called them as witnesses; thus giving the opposite party the opportunity and advantage of cross-examination.

What is here said of the conveyances to Mr. Cary has no reference to the conveyance by Markham to Thorson. To that conveyance the railway company is an entire stranger, and there appears to be no other testimony as to the value of the lot conveyed by it.

A very liberal rule of evidence prevails in this state in the investigation of values in condemnation proceedings. Great latitude is allowed in the examination of witnesses as to value, both on their direct and cross-examination; but there are limits to such examinations, as a perusal of the cases on that subject adjudicated by this court will show. In this case we think those limits have been passed, and forbidden ground occupied, to the injury of the defendant company. *Snyder v. W. U. R. Co.* 25 Wis. 60; *Hutchinson v. C. & N. W. R. Co.* 37 Wis. 582; *Watson v. M. & M. R. Co.* 57 Wis. 332; *Neilson v. C., M. & N. W. R. Co.* 58 Wis. 516; *Washburn v. M. & L. W. R. Co.* 59 Wis. 364.

2. The court instructed the jury as follows: " You are to determine this case from the evidence before you and the

knowledge of the premises you have acquired by a view of them, using your honest judgment, and governed by the rules of law which I have given you." Upon this instruction error is assigned.

In *Washburn v. M. & L. W. R. Co.*, *supra*, the following instruction was held erroneous: "You are to determine it [the compensation] from the whole evidence that has been given you in the case, from your view — you take the view you make, you take your own knowledge, your own judgment, your own good sense." In that case the office of a view in cases like this was somewhat fully discussed, and it was held that the true and only office of such view is to enable the jury to determine the weight of conflicting testimony respecting value and damage. This rule was applied in *Munkwitz v. C., M. & St. P. R. Co.* 64 Wis. 403.

We are of the opinion that the instruction in this case concerning the view is open to the same objections that prevailed against the instruction on the same subject in the *Washburn Case*. The jury may have understood therefrom that they might, in the exercise of honest judgment, properly rest their verdict upon their knowledge of the lot in question acquired by the view, even though their judgment was not sustained by the proofs. If instructed on the subject, they should have been told that their knowledge acquired by the view was to be used only in determining the weight of conflicting testimony of value.

3. For the purpose of informing the jury what sum the commissioners awarded to the plaintiff, his counsel, in opening the case, persisted, under objection, in reading to them the defendant's notice of appeal, in which the sum so awarded was stated. The court ruled, against objection and due exception, that he might do so. Direct testimony of the sum so awarded would have been immaterial, and therefore inadmissible. *Munkwitz v. C., M. & St. P. R. Co.* 64 Wis. 403. Probably it would also have been incom-

petent, as being in the nature of hearsay evidence. Of course, it was improper for the counsel, in his opening, to state a fact to the jury which his client could not be permitted to prove. However, the court instructed the jury that they could not consider the award as evidence of value, and added that the award was not in evidence.

We do not determine whether the error in allowing counsel for plaintiff to state to the jury the amount of the award would, of itself, work a reversal of the judgment. We only suggest that, when the cause is again tried, it will be the safer course not to repeat the statement.

4. The plaintiff recovered interest from the time the award of the commissioners was filed. This is alleged as error. The subject is discussed, and the principles upon which interest is to be allowed or withheld are determined, in *Uniacke v. C., M. & St. P. R. Co., post*, p. 108. No repetition of what is there said is required here. An application of those principles to this case leads to the conclusion that the plaintiff is entitled to interest on the whole sum assessed by the jury as compensation for the lot in question, from the date of filing the award.

*By the Court.*— The judgment is reversed, and the cause remanded for a new trial.