A. Gettelman Brewing Company, Respondent, vs. City of Milwaukee, Appellant.*

*December 8, 1943—March 14, 1944.*

* Motion for rehearing denied, with $25 costs, on May 4, 1944.

10

For the appellant there were briefs by *Walter J. Mattison,*
city attorney, and *Ronold A. Drechsler,* assistant city attor-
ney, and oral argument by *Mr. Drechsler.*

For the respondent there was a brief by *Shaw, Muskat &
Paulsen* of Milwaukee, and oral argument by *Martin R.
Paulsen*.

FRITZ, J.   To avoid confusion in referring to the parties
to this appeal, the appellant, city of Milwaukee, will be called
"city," and the respondent, A. Gettelman Brewing Company,
will be called "company." The company's property, which is
involved herein, consisted of a parcel of land with a frontage
of twenty-five feet on West Kilbourn avenue and one hundred
feet on North Sixth street. Upon the land there was a two-
story brick building, with living quarters on the second floor,
and store premises on the first floor which were used for a
tavern and a restaurant. In November, 1940, the city ac-
quired the property by condemnation under and pursuant to
ch. 275, Laws of 1931, as amended by ch. 179, Laws of 1937.
The board of assessment assessed the company's damages
for the taking of the property at $26,000. In October, 1940,
the common council of the city confirmed that assessment;
and there was published in the official paper of the city, "No-
tice by the board of assessment of the city of Milwaukee that
money for the payment of damages has been provided and
that said city will enter upon and appropriate the property."
In this notice twenty-eight parcels of land were described, in-
cluding the company's property, as to which the notice stated
that $26,000 was assessed by the board as the company's dam-
ages for the taking thereof by the city. In November, 1940,
the company perfected an appeal to the circuit court from the
board's assessment; and then moved for summary judgment.
A countermotion to deny the company's motion was made by
the city, which moved also for summary judgment in its favor.
The court denied the company's motion, and granted the
city's motion for summary judgment, leaving for trial only
the issue as to the amount of damages to be adjudged upon
the company's appeal. Upon an appeal by the latter to this

court those orders were affirmed. *Lamasco Realty Co. v. Milwaukee,* 242 Wis. 357, 8 N. W. (2d) 372, 8 N. W. (2d) 865. Thereupon, on the trial of the issue as to damages, a circuit court jury on June 2, 1943, assessed the fair market value of the property on November 3, 1940, at $31,625. The court denied the city's motion for a new trial and entered judgment on the verdict for the company's recovery of the amount assessed by the jury with interest. The city appealed from this judgment. Additional facts will be stated in connection with passing upon the contentions of the parties.

The city's principal contention is that error prejudicial to it was committed by the court in overruling the city's objections to the introduction of evidence by the company to prove that during the period of eleven years preceding the taking of its property by the city on November 3, 1940, a substantial decrease in the value thereof was caused by delay on the part of the city (1) in its consideration and discussions during that period of proposed plans and changes therein for the widening of West Kilbourn avenue; and by delay (2) in the city's final adoption and execution of the plan and its conduct of the litigation and condemnation proceedings incidental thereto, which resulted in the ultimate taking of the company's property. In accord with the city's contention in respect to the inadmissibility of that evidence, the city contends also that the court erred in refusing to give certain instructions to the jury, which were requested by the city, and likewise erred in giving certain other instructions requested by the company in relation to that evidence and the legal consequences of the delay which the company sought to prove thereby.

In passing upon those contentions there must be taken into consideration the additional facts stated chronologically in *Milwaukee v. Taylor,* 229 Wis. 328, 332, 282 N. W. 448, and *Lamasco Realty Co. v. Milwaukee, supra,* in relation to the state statutes and city ordinances enacted and other pro-

ceedings and action taken by the city at municipal elections, and by its common council and other agencies in the course of the above-stated eleven-year period in furtherance of the planning and ultimate execution of the street-widening projects in question. Although under the plan, as originally proposed, it was contemplated to widen West Kilbourn avenue and certain other streets within a more extended area, the actual execution of that plan was effected by means of two separate projects; viz., 1: Under a resolution adopted by the common council in 1924 for the widening of West Kilbourn avenue only to the east of North Sixth street (on the west side of which was the company's property); and 2: Under a resolution adopted in March, 1937, after the completion of the first project, for the widening of Kilbourn avenue westward from North Sixth street to North Ninth street (and also eastward from the east end of the widening of West Kilbourn avenue which was effected in executing the first project). It was in the execution of the second project that the company's property was taken by the city.

The instructions which were requested by the city, but refused by the court, in relation to the evidence in question, are as follows:

(1) "You are instructed that you are not to include in the amount which you find to be the fair market value of the property as of November 3, 1940, any amounts growing out of the lapse of time between the year 1909, when proposals to widen Kilbourn avenue (then Cedar street) were already being discussed, and November 3, 1940, the date when the city became the owner of the property."

(2) "You are instructed that you are not to include in the amount which you find to be the fair market value of the property as of November 3, 1940, any amounts growing out of the lapse of time between the adoption, by resolution of its common council on March 15, 1937, of the plan for the completing of the widening of East and West Kilbourn avenue from North Ninth street to Prospect avenue and Novem-

ber 3, 1940, the date when the city became the owner of the property."

And the instructions given by the court at the company's request and which the city contends were erroneous and prejudicial, are:

(3) "Evidence has been received upon this trial which tends to show that the plans and proposals of the city of Milwaukee to acquire the Gettelman property had a tendency to decrease the fair value of the same. On the other hand evidence has also been received to refute this contention. If you find that the pendency of the city's plans to take this property had a tendency to decrease the value of it while it was owned by the Gettelman Company up to November 3, 1940, you are instructed that said company is not required to stand any loss incident to such decrease in the fair market value of the property. In other words your determination as to the value of this property is to be based upon the situation as it would have been on November 3, 1940, if the city of Milwaukee had not planned and considered the acquisition of this property prior thereto. To express it in still another way, if the pendency of the plans of the city of Milwaukee to acquire this property in fact did decrease or depress the market value of this property then the Gettelman Brewing Company is entitled to be compensated to the extent that the pendency of the plans in fact did affect the true and fair market value of the property."

(4) "In connection with this element in the case you are instructed that if you find that the pendency of the plans of the city of Milwaukee to acquire this property also tended to materially reduce the rentals received from the property prior to November 3, 1940, then the rentals actually received cannot be used in determining the fair market value upon an income-capitalization basis. If you consider the rental value of the property as a basis for determining its market value, then you should consider the rents that reasonably and probably would have been received if the city had not previously contemplated to acquire this property."

The city in support of its contentions in relation to the court's rulings as to those instructions and the admission of

the evidence involved thereunder, relies largely upon the decision in *State ex rel. St. Louis v. Beck,* 333 Mo. 1118, 63 S. W. (2d) 814, 92 A. L. R. 373; and the following conclusions stated in *Milwaukee Trust Co. v. Milwaukee,* 146 Wis. 245, 131 N. W. 439, and in *Feiten v. Milwaukee,* 47 Wis. 494, 2 N. W. 1148, to wit:

"This remedy by appeal [in condemnation proceedings] is granted to abutting property owners for relief against grievances they may have against the assessment of benefits and damages made by the city authorities on account of the contemplated improvement. It necessarily limits the inquiry on appeal to the subjects on which the city authorities acted in making the assessment." (*Milwaukee Trust Co. Case, supra,* p. 250.)

"But we should hesitate to hold that mere delay in such a case, although we might think it was unnecessarily protracted, would constitute a ground of action. There must of necessity be a large discretion vested in the common council as to when it will take decisive action upon any proposition. Many circumstances might intervene to delay action, and it would be difficult for the court to say how much or how little time that body ought to take or may reasonably take for deliberation before final action. . . . It is only the ordinary case of incipient proceedings to condemn property to the public use, abandoned before consummation; and in all such cases if the city does not exceed its lawful authority, to the injury of the owner, pending the proceedings, it cannot be held liable for damages which the owner may incidentally sustain by reason of the proceedings. Such is the tenure by which all property subject to be taken for public use is held." (*Feiten Case, supra,* pp. 497–499.)

On the other hand, on this appeal the company concedes it is not entitled to recover for its loss in rents as the result of the pendency of the plans and proposals during that eleven-year period. However, in respect to the instructions in paragraphs designated above as (3) and (4), which were requested by the company, and the instructions in paragraphs (1) and (2), which were requested by the city, and in respect

to the evidence to which they relate and which was received over the city's objections, the company contends that any rise or fall in the value of property, which is incidental to the proposed taking thereof for a public improvement, cannot be considered in assessing the owner's damages in condemnation proceedings; that in so far as the pendency, for a number of years, of the city's plans and proposals to acquire the property tended to lessen the value thereof, reduce the income received as rent, or destroy the salability of the property and decrease its fair market value, the city, in taking the property, was not entitled to benefit by any reduction in value brought about by its proposed plan; and that therefore the owner is entitled to have the-jury determine what the value would have been on the date on which the property was taken by the city, under such circumstances as would have existed if the city had had no plans or proposals for the acquisition of the property. In support of those contentions the company cites *Kerr v. South Park Commissioners,* 117 U. S. 379, 6 Sup. Ct. 768, 29 L. Ed. 924; *Olson v. United States,* 292 U. S. 246, 54 Sup. Ct. 704, 78 L. Ed. 1236; *Wadsworth v. Manufacturer's Water Co.* 256 Pa. 106, 100 Atl. 577, Ann. Cas. 1917 E, 1099.

In none of those cases was there, however, involved or determined the particular question raised in this case; viz., whether in determining the fair market value at the time of the taking of the property in condemnation proceedings, there can be taken into consideration the amount of a decrease in such value as the result of extended delay on the part of the city, in its consideration and adoption of a plan for the public improvement and in its conduct of condemnation proceedings in execution thereof, between the time the improvement was authorized by the city to be made and the time of the taking of the property by the city, which, under the statutes, is the time as to which the value is to be assessed. In the *Olson, Kerr,* and *Wadsworth Cases* cited above, and likewise in *United States v. Miller,* 317 U. S. 369, 376, 63 Sup. Ct. 276,

147 A. L. R. 55, the question which was determined in relation to an increase in the value of land authorized to be taken for a public improvement was whether an increase which is due to the proposed or anticipated construction of the improvement is an element to be taken into consideration in determining the value for which the owner is entitled to be compensated. As to that question, which arose in *United States v. Miller, supra,* because of an owner's claim to such an increase in value between 1934, when it was officially recommended that the federal government contribute to the making of a railroad relocation project, and December 14, 1938, the date on which the market value of the land taken was to be determined, the court said,—

"If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. . . . If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement.

"The question then is whether the respondents' lands were probably within the scope of the project from the time the government was committed to it. . . . If, on the other hand, they were, the government ought not to pay any increase in value arising from the known fact that the lands probably would be condemned. The owners ought not to gain by speculating on probable increase in value due to the government's activities."

However, there is not involved in the case at bar any question as to any increase or decrease in value due to the proposed improvement itself. The narrower question with which we are concerned here is solely whether there can be included in the damages to be assessed for the taking of property any

amount for a decrease in the value thereof caused by the pendency and delay in the adoption and execution of the city's plans for making the improvement and its taking of the company's property finally for that purpose. As to that question the above-quoted conclusions stated in *Milwaukee Trust Co. v. Milwaukee, supra,* and *Feiten v. Milwaukee, supra,* and also the following conclusions stated in *State ex rel. St. Louis v. Beck, supra,* are directly in point. The facts in the latter case, which are material here, were as follows: In February, 1920, the city of St. Louis had enacted an ordinance on which a condemnation suit was based. Under the original proceeding the city sought to condemn for street-widening purposes considerable property at a certain intersection. Under an amended petition filed in July, 1931, and based on a new ordinance which was passed in March, 1931, and radically changed the lines of the street, the city finally condemned only a small portion of the larger area which it originally sought to condemn. Meanwhile, in September, 1920, the owner had brought a condemnation suit in circuit court which on his amended petition appointed, in June, 1924, commissioners to assess benefits and damages. The latter filed a partial report of the proceedings on March 4, 1929. Thereafter, on the relation of the city an original proceeding was commenced in the supreme court of Missouri for a writ of prohibition for the purpose of directing the circuit court not to instruct the commissioners that they could include damages for the decrease in value caused by the long pendency of the condemnation proceedings and the resulting delay and uncertainties. On that subject the supreme court said (pp. 815, 816),—

"The damages sustained from the institution and pendency of the condemnation proceeding itself, if any, must be an action sounding in tort. *Simpson v. Kansas City, supra.* . . .

"The pendency of the condemnation suit in no way affected the property itself and, therefore, did not damage the property. Under section 5 of article XXI the value of the

property taken or damages must be of the date that the ordinance became effective. . . . 'As said by BRACE, J., in *Kansas City v. Ward* [134 Mo. 172, 35 S. W. 600], *supra:* "The inconveniences arising from the institution of these proceedings and the delay or ultimate failure that may mark the course of their subsequent prosecution are the necessary incidents of the right of eminent domain in an orderly and judicial manner, and cannot be wholly provided against by legislation."

" 'The uncertainty caused by the probability that the proceedings will be carried through and the proposed work constructed over his land differs in degree only from that shared by the owners of all property, which may at any time be taken by eminent domain, whenever it may chance to lie in the path of a public improvement, and the decrease in income or other losses he may suffer from such uncertainty is held to be *damnum absque injuria.*' 2 Nichols, Eminent Domain (2d ed.), p. 1106, sec. 420. . . .

"The institution of condemnation proceedings of itself operates to restrict the owner in the full enjoyment of the premises affected thereby. If, after the institution of such proceedings, improvements are made, the maker thereof is charged with knowledge that he cannot recover compensation for such improvements; or, to state it another way, he makes them at his peril. Likewise, if a conveyance is made of property pending the condemnation proceedings, title passes subject to such proceedings. In the proceeding pending before the respondent there will not, as regards damages for pendency and delay of the suit, be a taking of the property or a damage of the property as is contemplated by the charter of the city of St. Louis or the constitution of this state that can be determined in a condemnation suit."

Those conclusions are in accord with the above-quoted statements in *Milwaukee Trust Co. v. Milwaukee, supra,* and *Feiten v. Milwaukee, supra;* and warrant the following conclusions stated in 18 Am. Jur. p. 1016, sec. 372,—

"It is generally held that damages for negligence or delay in the prosecution of condemnation proceedings are not recoverable in such proceedings, and that the proper remedy

for recovering them, where they are recoverable at all, is by an independent action or proceeding. This is on the ground that any damage on account of such proceedings is of a personal character, as distinguished from damage to the property itself, and is not an element to be considered in assessing benefits and damages in the proceeding."

It follows that the court was in error in overruling the city's objections to the evidence in question; and in refusing to give the instructions requested by the city, and in giving instead the instructions requested by the company in relation to that evidence. Because of these errors the cause must be remanded for a new trial. In view thereof the determination here of the following controverted matters will be helpful.

Evidence introduced by the company on the trial established that, as a result of the completion in 1929 of the first project authorized by the common council in 1924 for the widening of West Kilbourn avenue by adding fifty feet along the south side thereof eastward from North Sixth street, the company's building, which was on the west side of North Sixth street and directly opposite the added portion of West Kilbourn avenue, was given an exceptionally commanding and conspicuous position to persons traveling westward on the then widened West Kilbourn avenue; and, in connection with those facts, the company sought to establish that by reason of that unique position of its building for the eleven years prior to the taking of the company's property in 1940, it had acquired a much greater advertising value. For this greater value the company contends it is entitled to be compensated in assessing the fair market value of its property. This contention must be sustained. In so far as the value of the property had become enhanced by reason of its proximity and location in respect to the first widening project, which was completely executed prior to the authorization and commencement of the second project, the company is entitled to be compensated for the market value on November 3, 1940, as thus enhanced. *United States v. Miller, supra.*

Error is assigned by the city also on the ground that over its objection the court admitted evidence by which the company sought to prove that its building was damaged and the value decreased as the result of raising thirty-six inches the grade of North Sixth street and West Kilbourn avenue along the frontage of the building in 1929. The city contends that such evidence was not admissible upon the trial of the appeal in condemnation proceedings under ch. 275, Laws of 1931, from an assessment of damages for value of the property in 1940; and that the court erred in refusing to instruct the jury, as requested by the city, "that you are not to consider in the amount which you find to be the fair market value of the property as of November 3, 1940, any amount because of the change of grade made in 1929 on North Sixth street and West Kilbourn avenue adjoining the property." Those contentions must be sustained. Whatever may have been the cause of the condition of the building in 1940, the jury was to determine the value of the property in such condition as it was at the time of the taking thereof by the city. That was the sole ultimate issue before the board of assessment and likewise no other issue was to be determined upon the appeal to the circuit court. Consequently to the court's rulings in admitting the evidence in question and in subsequently refusing to instruct in relation thereto as requested by the city, there is applicable this court's statement in *Milwaukee Trust Co. v. Milwaukee, supra* (p. 251),—

". . . the court received evidence of and allowed damages resulting from the unlawful grading and filling of the street to the extent of about two feet in excess of that authorized by the proceedings for the improvement. This was an injury to the abutting owner not embraced in the original assessment of benefits and damages and hence could not be considered and litigated on the appeal."

The city contends also that the court erred in permitting the company to call and examine as adverse witnesses, under sec. 325.14, Stats., Robert L. Filtzer, who was a member of

the board of assessment which made the assessment; John Dvorak, who prior and subsequent to November, 1940, was an assessor of the city of Milwaukee for the purpose of assessing property for taxation purposes; and Frank Harder, the city's real-estate agent prior and subsequent to November, 1940. The city contends that an adverse examination under either sec. 325.14 (1), or sec. 326.12, of an officer, agent, or employee of a party is authorized only if the person to be examined acted for or on behalf of such party at the time of the occurrence of the particular transaction involved in the action; and that as neither Filtzer, Dvorak, nor Harder acted for or on behalf of the city in relation to the transaction which was the subject of the adverse examinations sought by the company, such examinations were not permissible under the statutes. In support of its contentions the city relies upon our conclusion in *Estate of Briese,* 238 Wis. 516, 518, 300 N. W. 235, that—

"What the statute [sec. 326.12] intends is that those who acted for or on behalf of the party in the transaction which is the subject of the examination may be examined under this section."

On the other hand, the company contends that in construing the provision in sec. 325.14 (1), Stats., that any party's—

"officer, agent or employee, or the person who was such officer, agent or employee at the time of the occurrence of the facts made the subject of the examination, may be examined upon the trial as if under cross-examination, at the instance of any adverse party,"—

the phrase "at the time of the occurrence of the facts made the subject of the examination" should be held to pertain only to the examination of such persons as were, at the time of the examination, no longer officers, agents, or employees; and that the provision in question was inserted in the statute to make it possible to adversely examine such persons.

Upon due consideration of the respective contentions of the parties, we find no occasion to change or modify the above-stated conclusion in the *Briese Case;* and as the words in the particular provision in sec. 326.12, Stats., upon which our conclusion was then based are the same as the words in sec. 325.14 (1), Stats., that conclusion is likewise applicable thereto. Consequently the city's objection to the adverse examination of Filtzer, Dvorak, and Harder, under sec. 325.14, Stats., should have been sustained. And as that objection was applicable to the adverse examination under sec. 326.12 of Filtzer before trial, the court likewise should have sustained the city's objection to the introduction in evidence of any part of the deposition taken on that examination.

It is further contended by the city that the court erred in its ruling in respect to statements made by opposing counsel in arguments to the jury in relation to testimony asserted to have been given by one of the city's witnesses before the board of assessment as to the amount by which other property had been benefited by the completed widening of West Kilbourn avenue. The record in relation to the matters involved under that contention is very confusing. However, as there may be a new trial, it may be helpful to note here that in assessing the value of the company's property there cannot be taken into consideration any evidence or argument as to any increase or decrease in the value,—due to the proximity of the public improvement,—of other property which was not taken for making the improvement. *United States v. Miller, supra.*

The trial court did not err,—as is contended by the city,—in including in the judgment for the company's recovery of the amount assessed by the jury also the interest on that amount from November 3, 1940. The city contends that because it deposited with the clerk of the circuit court on November 15, 1940, the full amount assessed by the board of assessments, the company, upon its appeal from this assessment, was entitled to interest upon only the difference between the amount

thereof and the amount of the jury's verdict. In support of its contentions the city claims that because the statutes do not provide for the payment of interest on the amount of the jury's award, and because the only statutory provision in relation to interest is that if the jury awards less than the board's assessment, and the amount thereof is paid into court and then withdrawn, pending the appeal, by the owner upon filing a bond to repay any amount by which the assessment may be decreased upon the appeal, with interest thereon from the date of such withdrawal (sec. 10 (2), ch. 179, Laws of 1937), that therefore the court is not authorized to allow interest on the jury's award to the owner, or that if any interest is allowed it should be only on the amount by which the assessment is increased by the jury.

These contentions cannot be sustained. Those statutory provisions neither expressly nor by implication preclude the recovery by the owner of interest on the full amount of an award finally determined by the jury's verdict; neither are they in conflict with nor do they affect the established rules in this state in relation to the owner's right to interest on the amount finally awarded. In *Seefeld v. Chicago, M. & St. P. R. Co.* 67 Wis. 96, 101, 29 N. W. 904, this court said,—

"The plaintiff recovered interest from the time the award of the commissioners was filed. This is alleged as error, the subject is discussed, and the principles upon which interest is to be allowed or withheld are determined, in *Uniacke v. Chicago, M. & St. P. R. Co., post,* p. 108 [67 Wis. 108, 29 N. W. 899]. No repetition of what is there said is required here. An application of those principles to this case leads to the conclusion that the plaintiff is entitled to interest on the whole sum assessed by the jury as compensation for the lot in question, from the date of filing the award."

In *Neilson v. Chicago & N. W. R. Co.* 91 Wis. 557, 560, 64 N. W. 849, the owner secured an increased award on appeal; and the court held that interest should be allowed on

the whole sum from the date of the commissioners' award, although the condemnor had deposited the amount thereof with the clerk of court. The court said,—

"But, as indicated in the foregoing statement, the plaintiff did appeal from the award of the commissioners, and thereby increased the amount $74. The verdict of the jury, therefore, stands in the place of the award. The case, therefore, is substantially the same as though the award of the commissioners had been $3,674, and the defendant only deposited the $3,600. Could the defendant in that event rightfully claim that such insufficient deposit should stop interest on that amount? We think not. Private property can only be taken for public use, against the consent of the owner or owners, by actually making or providing just compensation therefor. Const. art. 1, sec. 13; *Taylor v. C., M. & St. P. R. Co.* 83 Wis. 645. Providing only partial compensation is not providing just compensation. The owner or owners are not obliged to accept partial compensation. As the defendant, upon making such deposit, entered into the possession and use of the premises so condemned, 'the owners or parties entitled thereto,' were, in the language of the statute, 'entitled to receive the money paid into court on account of the award appealed from, without prejudice to the appeal taken.' R. S. sec. 1850. But, as indicated, they were not obliged to do so, and were at liberty to take their chances of increasing the award. Had the owner, in the case at bar, failed to increase the award, he would have been in no position to claim interest on the award; but, since the plaintiff succeeded in increasing the award, we must hold that the trial court properly applied the general rule, and allowed interest on the amount of the verdict from the date of the award." (pp. 560, 561.)

To the same effect see *Uniacke v. Chicago, M. & St. P. R. Co.* 67 Wis. 108, 29 N. W. 899; *Seefeld v. Chicago, M. & St. P. R. Co., supra; Jacobs v. United States,* 290 U. S. 13, 54 Sup. Ct. 26, 78 L. Ed. 142.

However, in view of the prejudicial errors stated above, the judgment cannot be sustained.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter an order granting a new trial on appellant's motion.