RENK and others, Respondents, v. STATE (Division of Highways), Appellant.

*No. 158.    Argued October 4, 1971.—Decided November 2, 1971.*
(Also reported in 191 N. W. 2d 4.)

For the appellant the cause was argued by *E. Gordon Young,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

For the respondents there was a brief by *Callahan & Arnold* of Columbus, attorneys, and *Richard R. Rynders* of Madison, of counsel, and oral argument by *Carroll B. Callahan.*

CONNOR T. HANSEN, J. This condemnation proceeding and the attendant litigation results from the prior determination of the state of Wisconsin to declare U. S. Highway 151 a controlled access highway under its police power. The effect of this declaration was to deprive Wisconsin Cheeseman, an abutting property owner, of all available highway access.

Plaintiffs, as individuals and in consort with others, are engaged in the development of several tracts of land located in Sun Prairie, Wisconsin. This appeal concerns

one of those tracts lying north of U. S. Highway 151 as outlined in the attached drawing prepared by this court for use in connection with this opinion. At one time plaintiffs owned the entire tract, but as a result of several conveyances were left with three comparatively small parcels which were condemned on July 11, 1968, by the defendant. The three parcels contained a long, narrow strip of land (part of Apollo Lane, and identified as tract A on the attached drawing), and two smaller triangular parcels lying in the right-of-way of U. S. Highway 151 (identified as parcels B and C on the drawing). The total area taken was 1.13 acres, inclusive of parcels B and C which contained a total area of .06 acre.

In 1967 and early 1968, the plaintiffs sold tracts 1 and 2, as identified on the attached drawing, to Wisconsin Cheeseman, the abutting owner of a triangular-shaped parcel of land fronting on U. S. Highway 151. On April 22, 1968, plaintiffs sold tracts 3 and 4, as identified on the attached drawing, to General Telephone Company. For reasons hereinafter set forth, plaintiffs retained title to tract A (a portion of Apollo Lane), which is a curved strip of land approximately 66 feet wide and 700 feet long. Walter Renk, one of the plaintiffs, testified that he was on the Board of Directors of General Telephone Company, and that the sale of tracts 3 and 4 resulted from efforts by himself and others to attract General Telephone Company to locate in the city of Sun Prairie. In order to persuade General Telephone Company to locate in Sun Prairie it was necessary that they have approximately 30 acres of land available for purchase. To provide the necessary acreage, Walter Renk and others purchased tract 3 and included it in the sale to General Telephone Company for exactly the same price that they paid for it. The conveyance of tract 3 to Renk and others is dated April 1, 1968. There is testimony that General Telephone Company would have also purchased that por-

tion of Apollo Lane designated as tract A; however, as will be stated later, it was not available to them.

Tract 1 was sold for $4,333 per acre; tracts 2 and 4 for $5,000 per acre; and tract 3 for $5,500 per acre. These sales to Wisconsin Cheeseman and General Telephone Company left the record title of tracts A, B and C in the plaintiffs.

Initially it was apparently contemplated that Apollo Lane would be located immediately to the north of and adjacent to the original parcel of land owned by Wisconsin Cheeseman and thus provide them with an alternate highway access. However, on October 30, 1967, tract 1, consisting of six acres and lying immediately north and west of Cheeseman's original property, was sold to them by plaintiffs.

November 14, 1967, a meeting was held between plaintiffs, the defendant, Cheeseman, and the city of Sun Prairie. At this meeting it was learned by defendant that tract 1 had been sold to Cheeseman and therefore Apollo Lane was relocated to the north of tract 1 to accommodate this sale. At a second meeting on November 15, 1967, it was agreed by the parties that Cheeseman would purchase tract 2, and Apollo Lane was relocated again to the north of this parcel, in the location shown as tract A. The alternative locations of Apollo Lane were surveyed by a surveyor for Renk Enterprises, a corporation in which plaintiffs were stockholders. However, the record reflects the property north of Cheeseman was owned by the plaintiffs in their individual capacity. Alternatives available to the state in providing highway access to Cheeseman were considered by the state highway department. However, the defendant ultimately decided to provide access by means of Apollo Lane.

Plaintiffs' professional appraiser testified that the construction of Apollo Lane would result in no general or special benefits to abutting property owners. He stated

that Appollo Lane had a detrimental effect on the value of the property sold to General Telephone Company because it divided up the parcel and prevented full utilization of the exposure on State Trunk Highway 19. He testified that the best use of the land comprising Apollo Lane was commercial in connection with adjacent property and that the fair market value of the property as of the date of taking was $5,650. The appraisal included parcels A, B and C. The appraisal was based on comparable sales and took cognizance of the fact that all of the parties to the sales were fully knowledgeable with respect to the proposed construction of Apollo Lane.

Defendant's professional appraiser testified that the highest and best use of the land condemned was for roadway purposes, and therefore the market value of the land would be zero. He was of the opinion that Apollo Lane conferred a special benefit to abutting property owners in that it made ingress and egress more convenient and provided another access to State Trunk Highway 19. He was also of the opinion that Apollo Lane benefited the land west of Broadway Drive. He stated that the comparable sales relied on by plaintiffs were not a proper basis for the valuation of Apollo Lane.

### Issues.

We consider this case presents two issues:

1. Did the trial court abuse its discretion in granting a new trial in the interest of justice?

2. Can it be said as a matter of law that the condemnation of the lands of plaintiffs constituted a total taking?

### New trial.

The state submitted a request that the jury be asked the fair market value of the property immediately before the taking; the fair market value of the property immedi-

ately after the taking; and whether any special benefits accrued to plaintiffs' abutting property by the construction of Apollo Lane. However, a special verdict was submitted to the jury which asked only one question: "What was the reasonable market value of the land known as Parcel 47 or 1.13 acres (the land being the land formerly owned by plaintiffs and now incorporated in Apollo Lane) on July 11, 1968?" The court instructed the jury that they could find special benefits, the instruction being similar to one requested by the state.

The decision of the trial court on motions after verdict clearly, and in our opinion correctly, sets forth the basis upon which a new trial in the interest of justice was granted:

"The case was submitted to the jury by agreement of the parties, not as a partial, but as a total taking. No objection was made to the form of the verdict. We did, however, give an instruction on severance damages as if the case was one of a partial taking. The form of the verdict and the instruction were not consistent and we consider that this may well have been erroneous. The only manner in which special benefits could be offset would be on the theory that in fact the condemnation and the sales were in fact almost contemporaneous, so that the jury, if the case was submitted on the theory of a partial taking, should have considered the value of the property as a whole, including the lands sold prior to the taking, before and after the taking. If it was to be submitted as a total taking, it was properly submitted with respect to the verdict form, but we should not have instructed on severance damage."

Sec. 32.09, Stats., sets forth certain rules for determining just compensation.

"32.09 **Rules governing determination of just compensation.** In all matters involving the determination of just compensation in eminent domain proceedings, the following rules shall be followed:
". . . .

"(3) Special benefits accruing to the property and affecting its market value because of the planned public improvement shall be considered and used to offset the value of property taken or damages under sub. (6), but in no event shall such benefits be allowed in excess of damages described under sub. (6).

" . . . .

"(5) In the case of a total taking the condemnor shall pay the fair market value of the property taken and shall be liable for the items in s. 32.19 if shown to exist.

"(6) In the case of a partial taking, the compensation to be paid by the condemnor shall be determined by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation, assuming the completion of the public improvement and giving effect, without allowance of offset for general benefits, and without restriction because of enumeration but without duplication, to the following items of loss or damage to the property where shown to exist: . . ."

The language of the statute is such that special benefits can only be used to offset the amount of compensation where there is a partial taking or severance. This case was submitted to the jury by agreement of the parties as a total taking. The parties did not object to the form of the verdict. Neither did they submit requested forms of verdict to the trial court. The instructions of the trial court included instructions as to severance damages and were similar to those requested by the state. This instruction was such as would be used for a partial taking.

In *Dowd v. Palmer* (1944), 245 Wis. 593, 595, 596, 15 N. W. 2d 809, it was held that:

". . . An application for a new trial addressed to the sound legal discretion of the trial court should be granted only when in the consideration of the case, a substantial right of a party has been so dealt with that it has not been given its proper weight, thus making it reasonably

clear that the trial was not a fair one. The general conduct of a trial is largely within the discretion of the judge presiding, and serious mistakes as the case proceeds due to errors in rulings or because of prejudicial events intervening to such an extent as to unfairly influence the result may warrant if not require a new trial in the interest of justice. Slight evidence, however, may create a jury question and be sufficient to require that the ultimate finding of fact be made by the jury. And still a new trial may be granted if the overwhelming evidence is against the finding of the jury. On the other hand, the law contemplates but one fair trial."

In *Quick v. American Legion 1960 Convention Corp.* (1967), 36 Wis. 2d 130, 134, 135, 152 N. W. 2d 919, the court stated the standards by which the granting of a new trial in the interest of justice would be reviewed:

"When a trial judge has ordered a new trial in the interests of justice that order will be affirmed unless there is a clear showing of an abuse of discretion. . . . Though it is within the power of this court to reverse, such an order will be reversed only upon the showing of a clear abuse of discretion. . . . This court, however, seeks not to sustain the verdict of the jury, but looks for reasons to sustain the findings and order of the trial judge. . . . Only when it becomes apparent that the trial judge grounds his decision for a new trial upon an erroneous view of the law, does this court take the position that the judge's determination on this question ceases to be discretionary. . . .

"If one ground relied upon by the trial court in granting a new trial in the interests of justice is sufficient, the order of the trial court will be affirmed. . . . Where the answer to one material question shows that the jury answered perversely, the court should set aside the entire verdict unless it is satisfied that the answers to other questions were not affected by such perversity. . . ." (Citations omitted.)

The trial court did not abuse its discretion in granting a new trial in the interest of justice.

*Total or partial taking.*

We conclude that under the facts of this case, it can be said as a matter of law that the condemnation of plaintiffs' lands constituted a total taking.

Broadway Drive is immediately to the west of the property owned by Wisconsin Cheeseman and General Telephone Company. The street runs in a north and south direction. West of Broadway Drive is Royal Oaks subdivision which was platted and developed by Renk Enterprises, a corporation. It appears that plaintiffs had a substantial interest in this corporation. The record does not reflect how many lots in Royal Oaks subdivision had been sold, but the record does reflect a number of them had been sold and put to residential use prior to the instant condemnation. North of Royal Oaks and abutting Broadway Drive as it extends past a portion of the property owned by General Telephone Company appears to be some undeveloped real estate owned by plaintiffs.

Two theories are advanced to support the proposition that the instant condemnation resulted in a partial taking:

(1) The sale of plaintiffs' property to Wisconsin Cheeseman and General Telephone Company which abutted Apollo Lane, in effect, created a severance of Apollo Lane and resulted in special benefits in the form of increased sales prices.

(2) The land condemned was a severance from the land owned by plaintiffs lying adjacent to and west of Broadway Drive.

*Severance from General Telephone and Wisconsin Cheeseman property.*

Defendant argues that the sale prices of the land sold by the plaintiffs to General Telephone and Wisconsin

Cheeseman abutting Apollo Lane reflected benefits from the proposed construction of Apollo Lane, and further payment to the plaintiffs in condemnation proceedings would be duplicitous. However, nowhere is there any indication that the state was legally obligated to construct Apollo Lane prior to July 11, 1968, the date of taking. Sec. 32.09 (1), Stats., declares that:

"(1) The compensation so determined and the status of the property under condemnation for the purpose of determining whether severance damages exist shall be as of the date of evaluation as fixed by s. 32.05 (7) (c) or 32.06 (7)."

Under sec. 32.05 (7) (c), the date of evaluation is the date on which the award is recorded in the office of the register of deeds in the county where the land is located. Under sec. 32.06 (7), the date of evaluation is the date on which a petition for condemnation proceedings and a lis pendens is filed in the county or circuit court where the land is located following a nonacceptance of a jurisdictional offer by the condemnee. The record does not indicate whether these procedures were followed. In any event, the statutory provisions for determining just compensation are not applicable until there is a taking. *See: More-Way North Corp v. State Highway Comm.* (1969), 44 Wis. 2d 165, 170 N. W. 2d 749; *A. Gettelman Brewing Co. v. Milwaukee* (1944), 245 Wis. 9, 13 N. W. 2d 541.

Furthermore, the record reflects that the defendant was faced with the proposition of providing access for Wisconsin Cheeseman, and that when alternative access routes were considered, resistance developed from the residents of Royal Oaks subdivision. Also, it appears that General Telephone Company would have purchased tract A. However, plaintiffs retained title to tract A because at meetings with various representatives of the state it was indicated that defendant wished to acquire tract A. It also appears to be acknowledged by the plaintiffs that

this representation by the defendant was not legally enforceable.

In *Petkus v. State Highway Comm.* (1964), 24 Wis. 2d 643, 130 N. W. 2d 253, we extended the definition of special benefits to include "enhanced value because of more advantageous adaptability for use." [1] However, since we have determined as a matter of law that in this case the acquisition of the land constituted a total taking rather than a partial taking, the rule is not applicable.

*Severance from land west of Broadway Drive.*

In order to offset alleged benefits resulting from the construction of Apollo Lane to land owned by the plaintiffs lying west and adjacent to Broadway Drive, it is necessary to find that the benefits were special in nature, sec. 32.09 (3) and (6), Stats.; and that there was unity of use in the land so owned by the plaintiffs. *Jonas v. State* (1963), 19 Wis. 2d 638, 121 N. W. 2d 235.

In 3 Nichols, *Eminent Domain* (3d ed.), pp. 108, 109, sec. 8.6210 (1), after discussing the general rules of set-off in partial taking of land, states that:

"The situation above described is to be distinguished from the case where an owner, part of whose property has been taken or damaged, is also the owner of a contiguous but separate and distinct parcel which, although not taken or damaged, is enhanced in value by the improvement. It has been held that the benefit to such separate tract may not be set off against the compensation for the taking of and damage to the first parcel unless such separate parcels are in fact utilized by the owner as a unit so that they may be regarded as one parcel for the purpose of determining benefits. If, as a matter of fact, however, such parcels are not actually used as a unit, but simply have such future possibilities, they may not be so considered."

*See also:* 27 Am. Jur. 2d, *Eminent Domain*, p. 134, sec. 315, *et seq.;* Annot., *Eminent Domain—Deduction of*

---

[1] *Hietpas v. State* (1964), 24 Wis. 2d 650, 130 N. W. 2d 248.

*Benefits,* 13 A. L. R. 3d 1149, 1212, sec. 14; and Annot., *Eminent Domain—Severance Damages,* 95 A. L. R. 2d 887. Thus, in *Jonas v. State, supra,* it was held that severance damages were improper where the land condemned was owned by the creators of a corporation in their individual capacity and separated by a street from the remaining land owned by the corporation and where the corporation had no contractual right in the land taken although it had two buildings located on the condemned parcel. In the instant case there is testimony indicating that the land east of Broadway Drive was owned in an individual capacity and the land west of Broadway Drive was owned in a corporate capacity and by various individual residential owners.

Applying the principles set forth in the above-cited authorities to the facts of this case, and in view of the determination of this court in *Jonas v. State, supra,* it cannot be said there was any unity of use in the lands owned by the plaintiffs on the east side of Broadway Drive and the lands located west of Broadway Drive.

Since we have decided the acquisition constituted a total taking, as a matter of law, it was prejudicial error to admit evidence of special benefits to land previously owned by plaintiffs and not owned by them as of the date of taking.

*Plaintiffs' petition for review.*

The order of the trial court granting plaintiffs' prayer for a new trial had the effect of denying plaintiffs' motion to change the answer in the special verdict from zero to $5,650 and order judgment thereon, or in the alternative to determine as a matter of law that just compensation be set at $5,650.

The decision of the trial court in disposing of plaintiffs' motions after verdict states:

"If the case was properly submitted as a total taking, the jury's finding is not a just one. All real estate has some value. It would seem on the evidence, viewing the

physical outline of the condemned property, that the condemned land may well not have a usefulness or market value that the adjoining lands have. But it still has some value and we deem the finding of no value contrary to the evidence reasonably viewed, if the case should have been submitted as a total taking."

The value of the real estate taken by the defendant is a question of fact to be determined by the trier of fact. The trial court properly denied these motions.

*By the Court.*—Order affirmed.