# ELMER C. WILLIAMS ET AL. *v.* NEW YORK, PHILADELPHIA AND NORFOLK RAILROAD COMPANY.

*Reassembling of Jury—Correction of Verdict—Condemnation Proceedings—Evidence as to Value.*

After a verdict in condemnation proceedings had been rendered and recorded, and the jury dismissed, all leaving the court room and some the court house, the court could not reassemble the jury and permit them to correct their verdict, so as to make it conform to what they had actually agreed.        pp. 105-107

A motion in arrest of judgment was not necessary to enable the Court of Appeals to review the action of the trial court in reassembling the jury, after their dismissal, in order to correct their verdict to conform to what they had actually agreed.

pp. 107, 108

In condemnation proceedings, it was proper to exclude evidence as to the price paid for a parcel of land a mile away from that sought to be condemned.                           p. 108

In condemnation proceedings, the exclusion of evidence as to the value of a parcel of land other than that sought to be condemned could not be reviewed when its location did not clearly appear from the record.                         p. 108

In investigating the market value of land, the price realized from voluntary sales of similar land in the vicinity within a reasonable time may be proved, either in direct or cross-examination of witnesses conversant with the facts, the necessary degree of similarity and the nearness in respect of time and place being largely in the discretion of the trial court.        p. 108

Testimony as to what one of the owners of the property sought to be condemned paid for his one-sixth interest was not objectionable on the ground that what was paid for such an interest was not fairly indicative of the value of the whole, this involving a question of the weight and not the competency of the evidence.        p. 108

**Syllabus.**

In condemnation proceedings by a railroad company, one of the owners of the land, who was thoroughly familiar with the development and sales of property in that neighborhood, was competent to give his opinion as to the effect of the use of the property in question for railroad purposes upon other property belonging to him.                          pp. 108, 109

In a proceeding to condemn land for railroad purposes, evidence was admissible as to the effect of such proposed use of that land on other land, on the opposite side of the street, belonging to one of the same owners, each tract being suburban land constituting a part of one unit of development, and the street being merely a paper street.                          pp. 109, 110

A statute which provides for an assessment of the value of the land taken will be held to include damages to the remainder of the owner's land.                          p. 109

One of the owners of land sought to be condemned should have been allowed to testify as to the recent sale to him of his part of such land, the price agreed to be paid by him, and his payments on account of the purchase money, this being relevant testimony as to the value of the property.                          p. 110

In condemnation proceedings, the exclusion of evidence as to what the owner of part of the property sought to be condemned paid the owners of the other part therefor was not rendered harmless by the fact that both the buyer and the sellers gave as witnesses their opinions as to the value of the property, what one actually pays for property being much more impressive evidence of his belief as to its worth than his mere opinion as to its value.                          pp. 110, 111

*Decided April 8th, 1927.*

Appeal from the Circuit Court for Wicomico County (BAILEY, J.).

Condemnation proceedings by the New York, Philadelphia and Norfolk Railroad Company against Elmer C. Williams and Edith L. Williams, to which Harry A. Wilson was subsequently made a party defendant. From the judgment for damages, defendants appeal. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*F. Leonard Wailes* and *William L. Rawls,* with whom was *Benjamin A. Johnson* on the brief, for the appellants.

*George H. Myers,* with whom were *Miles & Myers* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

Elmer C. Williams and Edith L. Williams, two of the appellants, were owners of a tract of land located in or immediately adjoining the City of Salisbury, Wicomico County, Maryland, which they had platted and were holding for sale in lots. Appellee, desiring to purchase 3.809 acres of the land "for the purpose of additional side tracks, delivery sidings, freight station and additional facilities for receiving and delivering freight in said town of Salisbury," and being unable to reach an agreement as to price with the owners, instituted condemnation proceedings. In the early stage of the pleadings, in the answer filed by Elmer C. Williams, it was alleged that "a part of said land has heretofore been sold, * * * the purchaser of said land being Harry A. Wilson," and on a supplemental petition, he was made a party defendant by order of court, and in the course of the trial the following agreement of counsel was filed:

"It is agreed by the parties hereto that from the total amount of damage which the jury shall find is sustained by the defendants by reason of the taking of the property sought to be condemned in this case, there shall be awarded to Harry A. Wilson such sum, if any, as the jury may find he is entitled to and all the balance of said total damage shall be awarded to Edith L. and Elmer C. Williams, jointly, and it is agreed that the petitioner shall be permitted to retain so much of the amount allowed Elmer C. and Edith L. Williams as may be necessary to pay and have released the mortgage of Edmund H. Derrickson, for seventeen hundred dollars with interest from Sep-

tember 8, 1926, and the mortgage of Sallie W. Martindale for six hundred dollars with interest from June 15, 1926.

> "Attorneys for Petitioner,
> "Miles & Myers,
> "Levin C. Bailey,
> "Attorneys for Defendant,
> "Ellegood, Freeny & Wales,
> "Benj. A. Johnson."

The case was tried by the court and a jury in the Circuit Court for Wicomico County. The finding of the jury is shown by the statement of the trial judge, contained in the twentieth bill of exception:

"After argument by counsel, the jury retired to consider their verdict, and later returned to the court room and rendered their verdict to the court, announcing that they found for the plaintiff as to the right to condemn and assessed the damages of Elmer C. Williams and Edith L. Williams, defendants, at $8618, and assessed the damages of Harry A. Wilson, defendant, as $1,400. The verdict was recorded, the jury dismissed, and court adjourned.

"Within a few minutes it was reported to the court that the jury intended that the $1,400 for Harry A. Wilson should be taken out of and deducted from the $8618 awarded to Elmer C. Williams and Edith L. Williams. The court was immediately reconvened and the sheriff directed by the court to have the jurors return to the jury box.

"As the jurors went out of the court room, they were given by the clerk an order for their pay on the county treasurer, whose office was down the steps from the court room, and they went to the county treasurer's office to get a check for their order. It was there that eight or nine of them were found still together and were directed to return to the court. Three or four of the jurors had gotten out of the courthouse, and it was around twenty minutes before they were all gotten together again. The defendants, through their coun-

sel, objected to the action of the court in having the jury reassemble.

· "The jurors were informed by the court that it had been brought to the court's attention that the verdict as taken by the clerk was not perhaps as they intended it should be. The clerk was instructed to call over the jury and again take the verdict. Again the jury returned their verdict for the plaintiff as to the right to condemn, and assessed the damages of the defendants Elmer C. Williams and Edith L. Williams at $8618, and assessed the damages of the defendant Harry A. Wilson at $1400, and stopped. They were asked if that was their full verdict. After some apparent talk among the jurors to themselves, the foreman announced that the $1400 assessed in favor of Harry A. Wilson was to be deducted from the $8618 assessed in favor of Elmer C. Williams and Edith L. Williams.

"The jurors thereupon were informed that the court preferred them to make their own calculations and to render their verdict for the exact amounts the different defendants were to get without any deductions.

"The jurors retired to their jury room and therefrom they returned to the jury box and rendered their verdict in favor of the petitioner upon the right to condemn, and assessed the damages of the defendants Elmer C. Williams and Edith L. Williams at $7218 and assessed the damages of the defendant Harry A. Wilson at $1400.

"Under the direction of the court, the jurors were each asked by the clerk if the verdict as then and there rendered was the verdict upon which they had agreed before leaving the jury box in the first instance, and to the clerk's inquiry each juror answered separately for himself that it was.

"To the action of the court in reconvening the court, reassembling the jurors and permitting them to correct their verdict, as above set forth, the defendants excepted and pray the court to sign and seal this

their twentieth bill of exceptions, which is according-
ly done this 7th day of January, 1927.
              "(Signed)   Joseph L. Bailey. (Seal)."

The action of the court in reassembling the jury and per-
mitting them to correct their verdict, in the circumstances
above set out, was, in our opinion, reversible error.   This
conclusion is unavoidable if we are to adhere to the rule
announced by this Court in *Gaither v. Wilmer,* 71 Md. 361,
in an opinion filed by Judge Miller, in which earlier decisions
of this Court are reviewed.   That case remains unaffected by
any subsequent decision, and we have no inclination to modi-
fy it.   Its reasoning is, in our opinion, unanswerable. *Harris
v. Hipsley,* 122 Md. 418, cited by appellees, is not in conflict,
but expressly recognizes the principle announced in the
earlier case.

There is a suggestion by appellees that the verdict as origi-
nally rendered by the jury does not appear by the docket
entries to have been recorded; but the trial judge distinctly
states in the bill of exception that it was, which is conclusive
of the matter on the record before us.

We do not think the point is well taken by appellee that
the action of the court cannot be reviewed because there was
not a motion in arrest of judgment; and that contention is
not supported by *Thillman v. Neal,* 88 Md. 525, or *Poe's
Pleading,* secs. 750, 757, cited by appellees.   There was a
motion in arrest of judgment in *Gaither v. Wilmer, supra,*
but there the verdict as rendered was defective, while here
the original verdict was not defective.   Appellants were not
objecting in this exception to the entry of a judgment but to
a defective verdict.   Their exception is to the ruling of the
court permitting a verdict, duly rendered and recorded, to be
stricken out.   It is not a case of a defect in the verdict, which
Mr. Poe says may be taken advantage of by a motion in arrest
of judgment, or of an omission in the course of the proceed-
ings, dealt with in *Thillman v. Neal, supra.*   Appellants were
entitled, if other exceptions were abandoned or disallowed, to
have this Court decide whether judgment should be entered

on the verdict as originally rendered, which right would have been lost by a motion in arrest of judgment, and an exception based on the refusal to grant that motion.

There are nineteen exceptions to rulings on evidence. The first and second were to the refusal to permit a witness on cross-examination to testify as to the price received and paid for two parcels of land. The first was a mile or more from the condemned land and the location of the other is not clear. There was no error on the first ruling, and we are unable to say there was any in the second.

There is no doubt about the rule that, in an investigation as to the market value of land, the price realized from voluntary sales of similar land in the vicinity within a reasonable time may be proved either in direct or cross-examination of witnesses conversant with the facts. But in regard to the degree of similarity which must exist and the nearness in respect of time and place, no general rules are laid down, and as the trial court is usually conversant with such matters, they must be left largely to his discretion. *Pattison v. Baltimore,* 127 Md. at p. 241.

The third exception is not pressed. We find no error in the ruling to which it relates.

The fourth is to permitting a witness to testify what one of the appellants paid him for a one sixth interest in seventy lots. The objection urged is that the amount paid for a sixth interest is not fairly indicative of the value of the whole. No error. It is a question of weight and not of competency.

The fifth and the sixth relate to the refusal to permit Elmer C. Williams, one of the defendants, to give his opinion as to the effect of the use of the property condemned for the purposes of the railroad company would have upon defendant's property in the Waverly development on the west side of Jackson Street, opposite the strip from which the condemned property is taken. It is contended by appellee that this testimony was properly excluded, (a) because witness was not shown to have sufficient acquaintance with the subject-matter of the inquiry to qualify him to express an opinion; (b) because the land to which the inquiries are

directed is in no way a part or parcel of the land from which
the condemned land is taken.  As to the first reason, the wit-
ness is a party in interest and was thoroughly familiar with
the development and sales of property in that neighborhood;
as to the second, the land on each side of Jackson Street
appears to be a part of one unit of development.  Jackson
Street appears to be, like other streets and avenues laid
out on the plat, merely a paper street.  It is a suburban
property, of which very few lots have been sold, and dis-
tances which might seem great in built up sections would
not be so great when considered in reference to open spaces.
The progress of the development of more distant portions
of the unit might be greatly impeded by anything that
affected the nearby portions.  We think the rule stated in
*Lewis on Eminent Domain,* sec. 473, cited with approval in
*Ridgely v. Baltimore,* 119 Md. 581, that "a statute which
provides for an assessment of the value of the land taken
will be held to include damages to the remainder as well,"
applies here.

This is not in conflict with anything that was decided in
*Marchant v. Baltimore,* 146 Md. 513, cited by appellee.  In
that case this Court said there was no reversible error in
refusing to direct that the jury be shown the property owned
by defendants on the west side of Hanover Street, when
the property condemned was on the east side, because "it
does not appear that there were any common or related uses
to which the two areas were subjected.  No proffer was made
to show that the value of the defendants' land to the west
of the street would be diminished by the city's appropria-
tion of the property now in litigation. * * * In the absence
of anything in the record to indicate that any impairment
of the value or utility of the defendants' land west of Han-
over Street would result from the condemnation of the sepa-
rated and independently used property which is sought to be
acquired in this proceeding," the Court refused to vacate
the inquisition for the reason assigned.

Here it is a question of weight and not of competency of the testimony offered. It might have been of much or little value, and the proposed uses of the property to be taken may have been advantageous or disadvantageous to the remaining property. These were questions for the jury, and we think the excluded testimony should have been admitted for what it was worth.

The eighteenth and nineteenth are covered by what we have said of the fifth and sixth, except that the witness was not interested in the property. We think, however, he qualified, and should have been permitted to answer the questions propounded.

We find no error in the ruling involved in the seventeenth exception. The testimony excluded was of an abstract character, having no particular reference to the subject-matter of the inquiry, and was in regard to a matter about which the jury was probably as well informed as the witness. The seventh was not pressed and we find no error in the ruling therein complained of.

The eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth and sixteenth exceptions were to the exclusion of testimony of Harry A. Wilson, one of the defendants, in regard to a recent sale to him of a portion of the land sought to be condemned, and the price agreed to be paid by him, and his payments on account of the purchase money. There was reversible error in these rulings. It was said in *Baltimore v. Smith,* 80 Md. 458. "We think, therefore, that the prices realized at sales of the land in question and of similar land in its vicinity, made within a reasonable period of time theretofore, being voluntary and not forced sales, are admissible in evidence, either on direct or cross-examination of witnesses conversant with the facts." There is nothing in the record to indicate that this sale was not made in good faith; and if it was, there could not well be more relevant testimony as to the value of the property.

It is argued by appellee that no harm was done because, after all, what was offered for the property by the buyer and

accepted by the owner, simply reflected their opinion of its value, and that this they gave as witnesses. But that is not a satisfactory answer. What one actually pays for property is for a jury much more impressive evidence of his belief as to its worth, than would be any opinion not involving the risk of one's own money.

For the errors above indicated the judgment must be reversed.

<div style="text-align:center">

*Judgment reversed, and new trial awarded,
with costs to appellants.*