CONGRESSIONAL SCHOOL OF AERONAUTICS,
INC., ET AL. *v*. STATE ROADS COMMISSION

[No. 20, September Term, 1958.]

*Decided November 20, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Arthur G. Lambert,* with whom were *Edward S. Northrop* and *Walter S. Furlow, Jr.,* on the brief, for appellants.

*Joseph D. Buscher, Special Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *William B. Wheeler, Special Attorney,* on the brief, for appellee.

Brief amicus curiae on behalf of Montgomery County, Maryland, filed by *Alfred H. Carter* and *Rourke J. Sheehan.*

BRUNE, C. J., delivered the opinion of the Court.

A property owner, Congressional School of Aeronautics, Inc., (the School) appeals from the award made in condemnation proceedings instituted by the State Roads Commission (the Commission) in the Circuit Court for Montgomery County. The purpose of the proceedings was to acquire land for the widening of a highway, Route No. 240, in the City of Rockville. The original plats filed on July 13, 1956, showed a proposed taking of 64,722 square feet of the School's land. At the trial the Commission filed amended plats increasing the area to be taken to 89,343 square feet.

After the filing of the original plats negotiations between the Commission and the School for the purchase and sale of the land were unsuccessful, and the matter was referred to the Board of Property Review of Montgomery County. The Board determined the fair market value of the property to be $1.25 a square foot, or $80,902.50 for 64,722 square feet. This same rate, if applied to 89,343 square feet, would have produced a valuation of $111,688.75. The Commission appealed from the Board's findings and award and instituted condemnation proceedings in the Circuit Court, pursuant to Code (1957), Art. 89B, Sec. 18. The trial resulted in a judgment in favor of the School, based upon the jury's verdict, in the amount of $49,000, with interest from the date of the verdict which was January 10, 1958. This valuation works out at approximately 55¢ a square foot.

All of the land to be taken was zoned as residential. This classification had been retained for a strip 100 feet wide measured from the center line of the existing road. Next to this strip was another strip 200 feet wide which was zoned as commercial, and beyond that the balance of the School's property was zoned as light industrial. One of the Commission's witnesses testified that the strip zoned as residential "was reserved for road widening," and another witness for the Commission gave similar, but less positive, testimony as to the reason for the reservation.

The Commission's experts valued the land in question at $1.08 to $1.10 per square foot, if zoned commercially. Two of them reduced their valuations by 50% because of the resi-

dential zoning. The other, Mr. Dieudonne, who also took into consideration the prospect that the property might soon be taken for highway use, valued the land at approximately 40% of the $1.10 figure which he placed on it if zoned as commercial. Their respective valuations were 55¢, 54¢, and about 45¢ per square foot.

The School's real estate experts valued the land at prices ranging from $1.25 to $1.50 per square foot. One made no distinction between property zoned commercially and property zoned residentially. He did this partly on the basis of comparable sales involving tracts zoned partly as residential and partly as commercial and in part because he believed that special permits could be obtained to allow the property zoned as residential to be used for parking purposes in conjunction with adjacent land zoned as commercial. (Somewhat similar testimony with regard to obtaining special permits was also given by one or more other witnesses.) Another of the School's experts discounted the value of the property from $1.50 per square foot for commercially zoned property to $1.42 per square foot for property zoned as residential. The School's third expert does not appear to have made any differentiation between the land zoned as residential and that zoned as commercial. He arrived at a valuation of $1.25 per square foot.

The School sought to offer evidence of the valuation fixed by the Board of Property Review, but this evidence was excluded. The Commission sought to introduce evidence of an attempt by the School to obtain a reduction in the amount of its property assessment, but this, too, was excluded.

The questions which we are asked to determine are six in number. First, was the zoning of the strip in question as residential invalid as amounting to a taking of property without payment of just compensation? Second, if so, was the zoning of that property open to attack in this proceeding? Third, should the testimony, as to value, of one of the Commission's witnesses have been stricken because he took into account the limited period for which the property might be available for use on account of the prospective taking for the purpose of widening the highway? Fourth, was the award

of the Board of Property Review properly excluded from evidence? Fifth, should the jury's verdict have been set aside as inadequate and a new trial granted? Sixth, was evidence of the School's effort to have its property assessment reduced properly excluded?

Section 40 of Article III of the Maryland Constitution forbids the enactment of any law authorizing private property to be taken for public use without just compensation, and Sections 40 A and 40 B carry like prohibitions, coupled with provisions permitting takings to be effected in some circumstances and under certain safeguards before the amount of compensation is finally determined. There seems to be general agreement among the authorities which have considered the question that zoning cannot be used as a substitute for eminent domain proceedings so as to defeat the constitutional requirement for the payment of just compensation in the case of a taking of private property for public use by depressing values and so reducing the amount of damages to be paid. See 1 Metzenbaum, *Zoning* (2nd Ed.), pp. 74-79; 1 Orgel, *Valuation under Eminent Domain* (2nd Ed.), § 1, p. 10; 1 Yokley, *Zoning* (2nd Ed.), § 163; *Robyns v. City of Dearborn,* 341 Mich. 495, 67 N. W. 2d 718; *Grand Trunk Western R. R. v. City of Detroit,* 326 Mich. 387, 40 N. W. 2d 195; *State ex rel. Tingley v. Gurda,* 209 Wis. 63, 243 N. W. 317; *Henle v. City of Euclid,* 97 Ohio App. 258, 125 N. E. 2d 355, appeal dismissed, 162 Ohio St. 280, 122 N. E. 2d 792. Cf. *Scholl v. Borough of Yeadon,* 148 Pa. Super. 601, 26 A. 2d 135, (ordinance requiring set-backs, where the purpose was to effect a street widening more cheaply). See also *In re Gibson,* 28 Ont. L. R. 20, 11 D. L. R. 529 (1913), in which a city by-law classified certain property as residential and imposed a set-back restriction. The court there said that if the sole purpose of these restrictions was to prevent any building on the property pending its condemnation for use as a street, then the by-law should be treated as a part of the expropriation proceeding. The court went on to say that there were certain difficulties in so treating the restrictive by-law, but did not elaborate as to what they were.

The School relies as to this matter very heavily upon

*Moale v. Baltimore,* 5 Md. 314, decided in 1854. That was, of course, long before zoning came into existence. One of the principal questions involved in the *Moale* case was the validity of a proviso contained in Ch. 148 of the Acts of 1817 which undertook to deny damages upon condemnation for any improvement built in the bed of any projected street shown on a certain plat of the City of Baltimore, unless such improvement had been built before the laying out or locating of such street. When, and indeed whether, the streets shown on the plat would be opened was left entirely to the discretion of the municipality. This proviso was held to deny to the proprietor the use of his land and to amount to confiscation in violation of the constitutional provision requiring the payment of just compensation for private property taken for public use.

It has been held by this court that a zoning ordinance which permanently so restricts the use of property that it cannot be used for any reasonable purpose goes beyond permissible regulation and must be regarded as a taking of property without compensation. *City of Baltimore v. Cohn,* 204 Md. 523, 530, 105 A. 2d 482; *Northwest Merchants Terminal, Inc. v. O'Rourke,* 191 Md. 171, 60 A. 2d 743; *Hoffman v. M. & C. C. of Baltimore,* 197 Md. 294, 79 A. 2d 367. See also *Nectow v. City of Cambridge,* 277 U. S. 183; *Arverne Bay Construction Co. v. Thatcher,* 278 N. Y. 222, 15 N. E. 2d 587. Cf. *Walker v. Talbot County,* 208 Md. 72, 116 A. 2d 393, *certiorari* denied 350 U. S. 902.

This court has not previously been called upon to decide the question here raised as to the validity of a zoning classification which is claimed to have been made or retained in order to hold down the cost of the subsequent acquisition of a tract through condemnation proceedings for highway use or other public purposes. In the instant case we think that the question is not so presented as to require its determination.

The Commission asserts that the action of Montgomery County in retaining the hundred-foot strip of the School's property in a residential classification was proper. It also asserts that the School is not entitled to challenge that classification in this proceeding. Montgomery County, as *amicus*

*curiae,* takes the same position on both of these questions, and states that it has no interest in the other issues.

We understand that the residential strip reservation was made by Montgomery County several years prior to the taking here involved, and that this occurred before the School's property was annexed to the City of Rockville. The evidence shows that in October, 1957, about fifteen months after the institution of this suit, the City rezoned as commercial that portion of the hundred-foot strip previously zoned as residential which was not taken by the Commission in this proceeding.

The joint record extract gives us little information as to the zoning proceedings several years before the taking, but it is to be assumed that the School was fully cognizant of those proceedings. Neither Article 66 B of the Code of Public General Laws (1951), nor what is now Chapter 107 of the Montgomery County Code (1955), entitled "Zoning", as then in force provides for appeals to the Circuit Court or to this court in cases involving changes or refusals of changes in zoning classifications. See *Bogley v. Barber* and *Ertter v. North Washington Cemetery, Inc., infra.* There was thus no statutory remedy for the School to pursue. On the other hand, it is well established in this State that "In the absence of statutory provision for appeal or other adequate judicial review of administrative (or legislative) action the proper remedy is by bill in equity to enjoin enforcement of the action alleged to be unconstitutional or (in the case of administrative action) arbitrary or otherwise illegal." *Bogley v. Barber,* 194 Md. 632, 640, 72 A. 2d 17, (another zoning case which originated in that part of the Maryland-Washington Regional District which is in Montgomery County) ; *Ertter v. North Washington Cemetery, Inc.,* 200 Md. 251, 88 A. 2d 578 (another Montgomery County zoning case) ; *Heaps v. Cobb,* 185 Md. 372, 378-381, 45 A. 2d 73. No explanation is offered for the School's not having sought such a remedy. That was the course of action pursued in the Michigan, Ohio, Pennsylvania and Wisconsin cases cited above.

The School sought an instruction that if the jury should find that the "zoning authority" restricted the zoning of the

land taken to residential use in order that it might be acquired for highway use at a lower price, the jury should disregard this "restrictive zoning." The School also sought a binding instruction to like effect. These instructions were refused, and the School excepted to the court's charge because of their rejection.

The evidence is scanty on the reservation of the residential strip. No official who was concerned with that matter was called to testify with regard thereto. Article 66B of the Code (1957), entitled "Zoning and Planning", commonly spoken of in zoning matters as "the Enabling Act", recognizes the close relationship between planning and zoning, as does the opinion of this court in *Zinn v. Board of Zoning Appeals,* 207 Md. 355, 114 A. 2d 614. See also *Schiff v. Board of Zoning Appeals,* 207 Md. 365, 114 A. 2d 644. Section 16 of Article 66B specifies "adequate provisions for traffic" as one of the items to be considered in the formulation of a master plan. Section 19 confers the power of eminent domain, *inter alia,* for street or highway purposes upon planning commissions established under Article 66B. This seems consonant with the rule elsewhere recognized and above stated that zoning cannot be used as a substitute for eminent domain so as to defeat the constitutional requirement for the payment of just compensation for private property taken for public use.

At the argument in this court the Commission stated that it followed the practice of informing local planning or zoning bodies of contemplated highway improvements and the proposed routes thereof, in order that such anticipated improvements could be taken into account and the cost of the acquisition of land for highway use could be held down. Montgomery County and the Commission urge that such a program is necessary if costs of land acquisition are not to soar to such heights as to be prohibitive.

The Commission asks us to pass upon the validity of its policy just outlined. We are not prepared to do so on the scanty record before us. In the whole complex process of planning and zoning, including passing upon plans for new developments or subdivisions of one kind or another, there may be considerations affecting particular situations which

would have a material bearing upon the applicability of the general rule that zoning cannot be used to depress values in order to make condemnation less costly. For example, if a property owner or developer seeks present reclassification of a tract in anticipation of the construction of a new or improved highway, it might well be that he would be quite willing either to agree to dedicate some of his land for use of the new highway or to assent to the retention of an existing classification of land in its expected path in the hope and for the purpose of inducing the proper public authorities definitely to locate the proposed new or widened highway on a part of his land for the obvious benefit and enhancement in value of the balance of his tract. Plainly, the owner would derive benefit rather than sustain loss in such circumstances. We cannot say, *in vacuo,* how far it might be permissible for public authorities to proceed along such lines.

Such considerations as those above suggested seem to be involved in Sections 31 and 32 of Article 66B of the Code of 1957, which were enacted by Ch. 599 of the Acts of 1933. These Sections deal with planning and the reservation of locations of mapped streets for future acquisition. Under Section 31 the reservation of land for streets "for future taking or acquisition for public use" for a period of time to be fixed by the council, may be required. That Section authorizes the planning commission to negotiate or secure releases of claims, for damages or compensation for such reservations, or indemnity agreements against such claims. Section 32 prohibits (subject to exceptions in some cases where hardship would otherwise result) the issuance of permits for any building within an area so reserved during the period of reservation. No case involving these Sections has been decided by this court.

Provisions relating to planning and reservations for future street opening or widening somewhat similar to those contained in Sections 31 and 32 of Article 66B have been held not subject to successful constitutional attack in the absence of a showing that the complaining party has suffered loss or damage through the mere existence of restrictive provisions, against building within the lines of a proposed street widen-

ing as shown on a city official plan approved by the planning commission. *Headley v. City of Rochester,* 272 N. Y. 197, 5 N. E. 2d 198, in which the full and unanimous opinion of the Court of Appeals of New York was written by Judge Lehman. In that case the plaintiff sought a declaratory judgment that the ordinance and map were unconstitutional. The trial court dismissed the complaint, the Appellate Division reversed and entered judgment that the ordinance, map and plan were void and ineffectual to create any limitations or restrictions on the use or conveyance of the plaintiff's property. The Court of Appeals reversed that judgment. At p. 209 of 272 N. Y., the latter court said: "Whether the State may impose conditions for the issuance of permits in order to protect the integrity of the plan of a city where it appears that such conditions interfere with a reasonable use to which the land would otherwise be put or diminishes the value of the land, should not now be decided. Without proof that the imposition of such conditions has deprived an owner of land of some benefit he would otherwise derive from the land, there can be no deprivation of property for which compensation should be made." Cf. *Vangellow v. Rochester,* 190 Misc. 128, 71 N. Y. S. 2d 672.

In *State ex rel. Miller v. Manders* (Wis.), 86 N. W. 2d 469, the question (which we do not undertake to answer here) was decided. There a statute based upon the New York statute involved in the *Headley* case and the map ordinances of the City of Green Bay enacted thereunder, were held to be constitutional as a valid exercise of the police power. Some of Judge Lehman's language in the *Headley* case was cited on the main constitutional question in support of the proposition that municipalities should have the right to enforce planning in advance of actual acquisition of title in areas undergoing development and improvement. It was also held that the relator, who was seeking a writ of mandamus to compel the issuance of a permit to build in an area reserved for future street use had failed to show the application of the statute and ordinances to be unconstitutional as to his property. *Roer Construction Corp. v. City of New Rochelle,* 207 Misc. 46, 136 N. Y. S. 2d 414, was cited as an example of the type of

cases in which the facts would show unconstitutionality. In the *Manders* case the earlier Wisconsin case of *State ex rel. Tingley v. Gurda, supra,* was distinguished on the ground that there was no showing of a legislative motive to depress values.

See *United States v. Miller,* 317 U. S. 369, as to the effect of known plans for a public improvement upon valuation for condemnation purposes, and *A. Gettelman Brewing Co. v. Milwaukee,* 245 Wis. 9, 13 N. W. 2d 541, as to the effect, or lack of effect, of delay in carrying out a projected improvement, with regard to market value in condemnation proceedings. See also *United States v. Certain Lands in Town of Highlands,* 47 F. Supp. 934, 937. Cf. *Black v. Baltimore,* 50 Md. 235; *Baltimore v. Black,* 56 Md. 333; *Lord Calvert Theatre, Inc. v. City of Baltimore,* 208 Md. 606, 119 A. 2d 415, and cases therein cited relating to damages or lack thereof for delay in proceedings to open streets.

In some cases questions of limitations, laches, or possibly estoppel might be raised as a bar to any attack upon a zoning classification, though in at least one case, *Robyns v. City of Dearborn, supra,* the passage of twenty-two years from the date of the adoption of the ordinance to the date of a direct attack upon it was held not to be a bar. We do not undertake to express any opinion with regard to the validity of any such possible bars to the maintenance of an attack upon a zoning ordinance or classification.

The question of whether or not a zoning classification is subject to collateral attack is presented with regard to both of the instructions sought by the School on this subject. The cases in other jurisdictions which we have cited above were all cases of direct attack. In the *Moale* case the validity of a statute undertaking to limit the amount of damages was directly in issue.

In *Westchester County v. MacEwen,* 237 App. Div. 833, 260 N. Y. S. 875, the validity of the zoning ordinance of a city (New Rochelle), as applied to property sought to be condemned, was attacked. The trial court ordered that the city be joined as a party, but the Appellate Division reversed the order and suggested that a separate suit for a declaratory

judgment be instituted. (This was done, and in the later suit it was held that the condemning authority (the county) was a necessary and proper party. *MacEwen v. City of New Rochelle*, 149 Misc. 251, 267 N. Y. S. 36.)

In *Robinson v. Commonwealth*, 335 Mass. 630, 141 N. E. 2d 727, it was held that an attempt to show the value of the property sought to be condemned for a use not permitted under the applicable zoning ordinance constituted a collateral attack on the ordinance and that evidence of such value was therefore not admissible. Other procedures were available for a direct attack on the ordinance, but were not followed.

A similar result was reached in *Board of Commissioners v. Tallahassee Bank & Trust Co.* (Fla. 1st Dist. Ct. of App.), 100 So. 2d 67, 68, where it was said: "Respondent landowners in a condemnation proceeding attempted by their answers to attack the validity of a zoning ordinance of the City of Tallahassee in relation to its prospective use as evidence bearing on value of the subject property. The trial court correctly held that the validity of the ordinance could not be raised by answer making a collateral attack thereon."

No authority in this country has been brought or has come to our attention which sanctions a collateral attack in a condemnation suit on the validity of a zoning ordinance as applied to the property sought to be condemned. In the Ontario case of *In re Gibson, supra,* what appears to be a contrary view is taken. It is to be noted, however, that in the *Gibson* case the city was the condemnor and was also the author of the "by-law" under attack, and it was of course a party to the suit. We think that in accordance with the New York, Massachusetts, and Florida cases just cited, a collateral attack is not permissible, at least where, as in the instant case, a direct proceeding to challenge the validity of the classification, with the zoning authority as a party, was readily available. Both of the School's prayers based upon the alleged invalidity of the ordinance as applied to its property were properly rejected.

There are cases in which it has been held that a reasonable probability of a zoning reclassification within a reasonable time may be taken into account in determining the market

value of the property at the time of the taking. *State Roads Comm. v. Warriner,* 211 Md. 480, 128 A. 2d 248, and cases therein cited. In some other jurisdictions it has been held that the probability of early rezoning can be taken into account in valuing the property to be taken upon a showing that the existing classification is such that the property cannot be used profitably and upon the presumption that, in such a situation, the zoning authorities will perform their duty to revise the classification. *City of Beverly Hills v. Anger,* 110 Cal. App. 626, 294 P. 476; *Board of Commissioners v. Tallahassee Bank & Trust Co., supra,* 100 So. 2d, at 70. Where such a view prevails, much the same practical result may be achieved by offering evidence of the inappropriateness of the existing zoning classification as by a collateral attack. There is, of course, a presumption of the correctness of a zoning classification, *Montgomery County Council v. Scrimgeour,* 211 Md. 306, 312, 127 A. 2d 528; and it has been held that the status of property with regard to the existence or non-existence of zoning restrictions at the time of the taking might be considered by the jury, even though a change from no zoning to a restricted zoning classification was imminent and actually went into effect shortly after the taking. *Reindollar v. Kaiser,* 195 Md. 314, 73 A. 2d 493. (Somewhat curiously, this question came into that case as a result of efforts by the condemning authority in the trial court to exclude evidence of the restrictive zoning which was about to go into effect.)

The third question relates to the testimony of a witness (Mr. Dieudonne) who stated that he based his estimate of market value partly upon the limited time for which a prospective, willing purchaser might be able to use the property because of the prospect of its being taken for the highway widening which gave rise to this suit. This prospect (whether the witness regarded it as a probability or a possibility) appears to have been so interwoven with other factors which he took into consideration in arriving at his valuation as to constitute an integral and important factor in his appraisal, which was the lowest appraisal submitted by any witness. This court has held that evidence of value based upon

the effect of the taking involved in a pending condemnation suit is inadmissible. *Moale v. Baltimore, supra; McCormick v. Baltimore,* 45 Md. 512; *Bonaparte v. M. & C. C. of Balto.,* 131 Md. 80, 101 A. 594. We think that the rule is as applicable to considerations which might tend to depress values as to those which might tend to increase them and that it should also extend to the effect of the prospect of the taking. If the prospect of taking is to be used in gauging market value at the time of the taking, we should get into something of a vicious circle. See 1 Orgel, *Valuation under Eminent Domain,* 2nd ed. Sec. 106, p. 450. We, therefore, think that the inclusion of this factor rendered the entire testimony of this witness as to value inadmissible, and hence that the School's motion to strike his testimony, which was made when this ingredient of his appraisal became apparent, should have been granted.

We are not unmindful of the fact that the jury's verdict was for a higher amount than the valuation arrived at by this witness or that it was supported by the testimony of the Commission's other two expert witnesses and very closely approximates their appraisals. On the other hand, we cannot say that this lowest appraisal did not influence the conclusion at which the jury arrived. The School's expert witnesses all placed very much higher valuations on the property than did any of the Commission's experts, and this lowest appraisal clearly tended to offset the higher estimates of the School's witnesses. How far this lowest appraisal submitted on behalf of the Commission actually influenced the jury's assessment of damages we have no way of knowing. In these circumstances we cannot hold that it was not prejudicial to the School and that its admission should be regarded as harmless error. Accordingly, we conclude that the judgment must be reversed because this appraisal was allowed to remain in evidence for consideration by the jury.

The fourth question—the admissibility of the award of the Board of Property Review—will undoubtedly recur on the retrial of this case, and calls for decision now. The School claims that it is admissible. Its argument is based upon its construction of Section 18 of Article 89B of the Code (1957)

and the lack of success of two legislative attempts to amend the particular provision upon which it relies, so as to make the award inadmissible on appeal by either party. The State urges an opposite construction of the provision upon which the School relies, and it cites the failure of another legislative effort, which was designed to make the award admissible in evidence on appeal when offered by either party.

(References to Sections of the Code, without specification of any Article, in connection with this subject will be to Article 89B of the Code of 1957.)

Section 16 requires certification by the Commission to the Board of Property Review (the Board) of condemnation cases where the Commission and the property owner are unable to agree upon fair value and fixes the time within which such certification shall be made. Section 17 provides for the appointment by the Circuit Court in the counties and by the Supreme Bench in the City of Baltimore of a Board (and if necessary more than one Board) for each county and for the City of Baltimore. Each Board is to consist of three members—an engineer or person with engineering background and knowledge, a lawyer, and a person who is neither an engineer nor a lawyer. Each Board is to act under the jurisdiction of the court by which it is appointed, and its members are to be considered as officers of the court. The Board is to hear all cases certified to it and to determine the amount of the award to be paid by the Commission and may apportion it between persons having any interest therein. Each party is entitled to be heard before the Board, to be represented by counsel and to have the right of cross-examination. The Board is to view the premises. It is not required to adhere to "strict rules of evidence."

Under Section 18 either party, if dissatisfied with the award of the Board, has the right to appeal to the Circuit Court of the county or to the Superior Court of Baltimore City, depending upon where the property is located. This Section further provides:

"Upon appeal the case shall be heard and determined under the procedure set forth in this Article

and Article 33A of the Annotated Code of Maryland. In cases where the appeal is sought by the property owner he shall so notify the Commission in writing and it shall be the duty of the Commission to prepare and file the condemnation case in the proper court * * *, and the case shall be heard de novo and as if there had been no hearing before the board of property review. * * *"

The School argues that under the sentence last quoted the report of the Board is clearly not admissible against the property owner where the appeal is taken by the property owner, and that this sentence implies conversely that the report is admissible where, as in this case, the appeal is taken by the Commission.

Each of the Bills which failed of passage in the Legislature upon which the School relies (H.B. No. 634 at the 1957 session and H.B. No. 118 at the 1958 session) proposed a number of amendments to Article 89B, including express provisions making the findings of the Board inadmissible in evidence upon appeal and clearly making this provision applicable regardless of whether the appeal is taken by the Commission or by the property owner. The Bill which failed of passage to which the Commission refers (H.B. No. 111, 1958 session) was directed solely to making the findings and award of the Board admissible if introduced by either party and according to them such weight as the jury might determine.

The legislation creating the Boards of Property Review was enacted by Ch. 59 of the Acts of 1956. Section 17, which prescribes the powers and duties of the Boards, makes no provision for administering oaths to witnesses. The 1957 and 1958 Bills relied upon by the School would, among other amendments, have rectified this omission. Its existence seems to lend weight to, rather than to detract from, the Commission's objections to the admissibility of the Board's findings.

None of the Bills which failed of passage seems to throw much light on the interpretation of Section 18 as it stands. It seems reasonable to suppose that some question had arisen.

with regard to the correct interpretation of Section 18, but these attempts at amendment do little more than support such a supposition. An effort to clarify statutory language so as to avoid the recurrence of a question and to settle it one way or the other does not necessarily establish the meaning of the language sought to be clarified. Cf. *Baltimore Gas & Electric Co. v. State Roads Comm.*, 214 Md. 266, 276-277, 134 A. 2d 312, where a subsequently enacted statute contained one provision which was identical with the critical provision of an older statute involved in that case and also contained another section which expressly adopted the rule which the Gas & Electric Company contended was the correct construction of the old provision which was common to both statutes. Both of them dealt with the same question—whether the State Roads Commission or the public utility companies affected should pay for the cost of removal, relocation and reconstruction of utility structures made necessary by new highway construction. This court held that "no controlling significance can be given to the difference in language of the two Acts."

The only reasons which the School urges in support of its contentions on this point are the argument based upon the maxim that the expression of one thing is the exclusion of the other and the asserted legislative policy to favor the property owner where the Commission appeals from the findings of a State-created board. We do not think that the statutory language clearly manifests any such intention. On the contrary, we think that the correct meaning of the provision with regard to a trial *de novo* as if there had been no hearing before the Board, is to make it explicit that such a hearing shall in no way prejudice the rights of the property owner on the trial of the condemnation case, but that it does not detract from the language of the earlier part of Section 18 that "upon appeal the case shall be heard and determined under the procedure set forth in this article and in Article 33A." That procedure includes trial under the ordinary rules of evidence. No exception to the hearsay rule under the ordinary rules of evidence has been suggested which would make the findings of the Board admissible. We conclude that the trial court

correctly excluded evidence as to the Board's finding and award.

The fifth question is whether the verdict should be set aside for alleged inadequacy. The School's contention that it should be is, in substance, a motion for a new trial. Such motions are within the jurisdiction of the trial court and are not ordinarily reviewable on appeal. *Bradley v. Bradley,* 123 Md. 506, 91 A. 685; *B. J. Linthicum's Sons v. Stack,* 213 Md. 344, 131 A. 2d 721. There is nothing to suggest such inadequacy as might warrant an inference as a matter of law that the School's property would be taken without payment of just compensation. See *Hajewski v. Baltimore County,* 184 Md. 161, 167, 40 A. 2d 316. See also *Davis v. Board of Education,* 168 Md. 74, 176 A. 878, cited in the *Hajewski* case, in which the verdict was for one cent damages.

The sixth and last question pertains to the rejection of evidence relating to the School's effort to have its tax assessment reduced. The probative value of the proffered evidence seems rather slight. Apparently it pertained to the tract as a whole, and there is nothing in the proffer to show what value, if any, was placed by the School upon the tract directly involved. We think there was no error in its exclusion.

Because of the denial of the motion to strike the testimony of one witness, above referred to, we must reverse the judgment.

> *Judgment reversed, with costs, and case remanded for a new trial.*