## BERGEMAN ET UX. *v.* STATE ROADS COMMISSION OF MARYLAND

[No. 25, September Term, 1958.]

138

*Decided November 13, 1958.*

*Motion for rehearing filed December 11, 1958, denied December 12, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Victor H. Laws* and *E. Dale Adkins, Jr.,* with whom were *Adkins, Potts & Laws* on the brief, for the appellants.

*Walter W. Claggett, Special Attorney for the State Roads Commission,* with whom were *C. Ferdinand Sybert, Attorney General, Joseph D. Buscher, Special Assistant Attorney General,* and *Hamilton P. Fox, Jr., Special Attorney,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

In a condemnation proceeding filed on February 8, 1957, by the State Roads Commission the jury awarded the defendants $23,000 and from a judgment in that amount entered March 10, 1958, after a motion for new trial had been overruled, the defendants appeal here. The property in question, at 127 East Church Street in Salisbury, consists of a lot binding on Church Street for about 63 feet, with a depth of about 58 feet, containing about 3707 square feet, improved by a two-story frame dwelling house, from 50 to 75 years old, but renovated and remodeled in its interior after its purchase

by the appellants in 1948. On the first floor are a dentist's office and a beauty parlor, with a living room and kitchen in the rear, occupied by the appellants. On the second floor there are four bedrooms and two baths, three of these bedrooms being rented to weekly or daily tenants, and the other bedroom and bath being occupied by the owners. The taking was total, and no question is raised as to its necessity. Nor was any objection made as to the court's charge. The chief contention is that there was no legally sufficient evidence to support the jury's verdict, since the testimony as to value ranged from $26,588 to $48,000. It is further contended that there were prejudicial errors in the court's rulings upon the admissibility of evidence.

The appellee produced a witness, William G. Rayfield, who after qualifying as a real estate expert testified that he had made an appraisal and explained the basis for his opinion. His first method was by estimating the replacement cost of the building (28,000 cubic feet, at 60¢ per cubic foot), less depreciation (30%), which produced a figure for the building of $11,760. To this he added the estimated value of the land, at a square foot value of $4., or $14,828., and arrived at a total value for the property of $26,588. It is conceded that this is a proper method of valuation. See *Baltimore City v. Himmel,* 135 Md. 65, and *Pumphrey v. State Roads Comm.,* 175 Md. 498. His second method was by estimating the gross income from the property which he thought would be about $4,000. a year, less expenses, which he estimated at about $1,950. a year, or a net income of $2,150. (Actually, the difference would be $2,050.) Capitalizing the net income at 8%, which he testified would be a reasonable return, he arrived at a figure of about $27,000., which he felt was a verification of his appraisal under the first method. He testified that "most investors look for a 7, 8 or 9% return on their money." This method of valuation by capitalizing the net rents is also an accepted one. See 1 Orgel, *Valuation Under Eminent Domain* (2d ed.), §§ 157, 176, 177. The courts distinguish between the capitalization of rentals and of profits from a business. Cf. *Lustine v. State Roads Comm.,* 217 Md. 274, 280.

The appellee then produced a witness, Alfred T. Truitt, who, after qualifying as a real estate expert, estimated the value at $26,700. His physical appraisal, based on reproduction cost (27,448 cubic feet at 70¢ per cubic foot) less depreciation (40%) for the building ($11,540.), plus a land value at $4. a square foot ($14,820.), produced a total of $26,360. His income appraisal, which he stated to be a better test under the circumstances and in that particular locality, came to $26,700. His gross income figure was $4,308., but he made an allowance for vacancy of "one month in each 12 months' period in the area, except the owner's quarters," which reduced the gross income to $4,025. per year. He calculated the expenses or charges against gross income at $2,423. He capitalized the net of $1,602. a year at 6%, making $26,700. When asked why he used 6%, he testified "well, 6% is as much as anyone can hope to get from an investment, and is a likely income from investment." In cross-examination, he testified that "net income capitalized at 8% in this case would give a value of $20,025."

The appellants produced as their real estate expert, S. Denmead Kolb. He calculated there were over 38,000 cubic feet in the building, by including the attic and the unexcavated portion of the basement. However, he used a square foot computation, using $15. per square foot, depreciated at 33⅓%, and came up with a figure for the building of $25,040. He added the value of the land at $5. per square foot, for an overall valuation of $43,575. Using the income method, he found a gross income of $4,308. He allowed $200 for vacancies, and estimating the expenses at $1,700., came up with a net figure of $2,608. Using 6% for capitalization, he arrived at a value of $43,340., as a test of his first valuation.

The only other testimony as to value was that of Mr. Bergeman, one of the appellants, who testified he had $31,095. invested in the property, for which he had paid $11,500. in 1948. He testified that the rentals were $4,308. a year, including an allowance for his own occupancy, and an allowance for the dentist's office, although that had been vacant since July, 1955. The actual expense of operation came to

about $800. per year, not including the value of Mrs. Berge-man's services in connection with the rentals, or his own services. He valued the property at $48,000.

The appellants state the question to be "the extent to which the jury in a condemnation case is bound by the testimony as to damages presented to it." They argue that since the lowest estimate given by any expert was higher than that found by the jury, the jury must have either based their finding on pure speculation, or upon their own estimates derived from their view of the property, rather than upon the sworn testimony in the case. On the question of the function of a view, the authorities are not in accord as to whether the information and knowledge gained by a jury's view of the property sought to be condemned is evidence or not. The better view seems to be that it is real evidence to be considered. See 5 Nichols on *Eminent Domain,* § 18.31; 1 Orgel, *Valuation Under Eminent Domain* (2d Ed.), § 129; 4 Wigmore on *Evidence* (3d ed.), § 1168; McCormick on *Evidence,* § 183; 53 W. Va. L. Rev. 103. But it is generally recognized that an award based entirely on a view, and contrary to all the other evidence, cannot be sustained. In Maryland a view is provided for before the taking of testimony under Code (1957), Art. 33A, sec. 7; but sec. 9 provides that thereafter the trial shall proceed as in other civil cases. In *Kurrle v. Baltimore City,* 113 Md. 63, 76, it was held that the mere fact that the jury had viewed the premises did not preclude the court from passing upon the legal sufficiency of the evidence presented in court. But the emphasis to be placed upon the view has been variously stated. *Tide Water Canal Co. v. Archer,* 9 Gill & J. 479; *Baltimore City v. Megary,* 122 Md. 20; *Patterson v. M. & C. C. of Balto.,* 124 Md. 153, 161; *Hajewski v. Baltimore County,* 184 Md. 161, 167. Cf. *Cordish v. Bloom,* 138 Md. 81, 90. For present purposes, we may assume that a verdict based solely upon a view could not stand. The question remains as to whether there was legally sufficient evidence in the sworn testimony to support the verdict.

It seems clear that the jury was not bound to accept the conclusions of any expert. As we said in *State Roads Comm.*

*of Md. v. Novosel,* 203 Md. 619, 625: "The jury's function is to determine whether the emphasis sought to be given the facts in any of the testimony is correct, and they need not follow any witness' judgment as to the weight to be given to a particular factor in arriving at a valuation." In *Murray v. U. S.,* 130 F. 2d 442 (C. A. D. C.), a verdict for less than the amount fixed by any expert was sustained, where there was other evidence to support it.

The jury in the instant case may well have agreed with the conclusion of the witness, Truitt, that the capitalization of net rentals was a better test under the conditions in that locality, than a formula based in part upon the reproduction cost of an old building. In 1 Orgel, *supra,* § 176, p. 699, it is said: "Market value of vacant land plus reproduction cost of structures (with allowances for physical depreciation) is one possible index of the value of the entire property. But it is a plausible measure of value only under the rarely valid assumption that, if the building were to be destroyed, it would be reconstructed substantially with its present design and material, and on the same or similar land. The mere determination of the validity of this assumption requires an estimate of the probable earning power (that is, the rent value) of the whole property. For if the property could not be rented to yield on replacement cost, it would not be replaced. In effect, then, the value of the property is measured by the lesser of two alternative measures—the cost of replacement (minus allowances for depreciation) and the capitalized rent value of the enterprise for which the property is adapted." For a discussion of the weakness inherent in estimates of reproduction cost, see *C. & P. Phone Co. v. Pub. Serv. Comm.,* 201 Md. 170, 183.

On the other hand, the jury may well have found that the capitalization rate of 6%, which Truitt used, was too low. Truitt admitted that if he had applied to his net rental figure the 8% rate used by Rayfield, the valuation under this method would have produced a valuation of $20,500. A capitalization rate of 8% was upheld in *United States v. 6.87 Acres of Land, Etc.,* 147 F. 2d 351 (C. C. A. 2d). If the jury took the mean between the rates used by Truitt and Rayfield, 7%,

a capitalization of Truitt's net rental figure would have produced almost exactly $23,000. Even under the alternative formula, the jury may well have accepted Rayfield's estimate of 70¢ a cubic foot for reproduction cost of the building, and a square foot value of the land somewhat less than $4. The jury was "not required to adopt a price fixed by other sales, but they consider it in connection with their own view of the land and the other evidence in the case." *Baltimore v. Smith & Schwartz Brick Co.*, 80 Md. 458, 473. See also *State Roads Comm. of Md. v. Wood*, 207 Md. 369, 374. The verdict was not below the minimum that could have been arrived at by the use of either formula under the evidence presented.

It is trite to observe that the weight of evidence is for the triers of fact, or for the court on motion for new trial. We are only concerned with the legal sufficiency of the evidence to support the verdict, and in passing upon that question the testimony, and all proper inferences therefrom, must be considered in a light most favorable to the plaintiff's case. *Safeway Stores, Inc. v. Barrack*, 210 Md. 168, 173. We have also said that "the opinion of [an expert] witness, and the grounds upon which it was formed, and the weight to be attached thereto, were matters for the consideration of the jury." *Davis v. State*, 38 Md. 15, 41; *Marshall v. Sellers*, 188 Md. 508, 518. The value or weight of the opinion of an expert is dependent on, and is no stronger than, the facts on which it is predicated. Cf. *Grant v. Curtin*, 194 Md. 363, 385. The conclusions of the witnesses as to value in the instant case depend upon basic facts to which the formulae are applied, and we perceive no reason why the jury should not be permitted to draw their own conclusions from such basic facts as they may choose to find, if supported by testimony or permissible inferences therefrom. We think there was legally sufficient evidence to support the verdict.

The appellants' contentions as to the inadmissibility of evidence relate generally to the testimony of the witness Rayfield as to comparable sales to establish land value. This witness testified that he used a figure of $4. per square foot to establish his valuation of the bare land value, in connection with his first appraisal method above mentioned. In ex-

plaining how he reached this figure, he referred to five sales of property in the neighborhood which he thought comparable. It may be noted that in each case the figure was arrived at by dividing the lot area in square feet into the purchase price, without taking into account the value of the buildings thereon. The first sale of adjacent property, from Merryman, Trustee, to Wicomico Estates, which gave a figure of somewhat less than $4. per square foot, was not objected to. The appellants contend, however, that two of the sales mentioned, on High Street from Hearn to Holland and Carey to Kolb, were not comparable, in that the properties were not in a commercial zone when sold, although it was admitted that they had been rezoned approximately a year before the trial. The Holland sale was on November 6, 1956, and the trial was on December 5, 1957. If the property was not rezoned at the time of sale, it seems clear that rezoning was in immediate prospect. Rayfield testified that when Mrs. Hearn bought it several years before that, she "intended to make offices and apartments in it." Also, it seems inferable from his testimony that he considered the sales comparable, that he must have taken into consideration the prospect of early rezoning. In regard to the Kolb sale, it seems to have been admitted that the zoning was commercial, and there was no objection on this ground. It is, of course, generally true that property in a residential zone is less valuable than in a commercial zone, which would make them not truly comparable, but we have held that the probability of rezoning within a reasonable time may be taken into account in some situations. Cf. *State Roads Comm. v. Warriner,* 211 Md. 480, 486, and *Lustine v. State Roads Comm., supra,* (p. 282). We have also held that the trial court has a wide discretion in determining what sales are reasonably comparable, leaving the weight of the comparison for the consideration of the jury. *Lustine v. State Roads Comm., supra,* (p. 280), and cases cited. Under the circumstances we find no reversible error in the instant case on this point.

The appellants contend that it was error to permit the witness, Rayfield, to testify as to the price of $10,000. in the sale from Carey to Kolb, on the ground that his only knowl-

edge of the price was gained from the stamps on the deed, required under U. S. C. A. Title 26, § 4361 and Code (1951), Art. 81, sec. 273, 274. See also Code (1957), Art. 81, sec. 277, 278. The authorities are not entirely in accord as to whether an expert on values may utilize knowledge gained from public records of sales. Compare *United States v. 5139.5 Acres of Land, Etc.,* 200 F. 2d 659 (C. A. 4th), with *United States v. Katz,* 213 F. 2d 799 (C. A. 1st). See also *United States v. Lowrie,* 246 F. 2d 472 (C. A. 4th). In any event, we find no reversible error, for the reason that Kolb, when called as a witness by the appellants, admitted that he had paid $10,000. for the property in question. There was also an objection to Rayfield's testimony as to a sale from Morgan to the Milcar Realty Corporation, at $15,000. The witness testified that the stamps showed a consideration in that amount. Here again, the witness Morgan, called by the appellants, admitted that the amount paid at the time the deed was given was $15,500., which corroborated the testimony of Rayfield. Morgan testified that the actual price of the property sold to Milcar was greater than shown, for the reason that five years before the sale the parties had entered into an option agreement, in the form of a lease or installment sale, whereby the monthly rentals over a five year period would be credited against the purchase price of $20,000., so that the final payment would be $15,500. at the time the deed was delivered, if Milcar elected to complete the purchase. If we accept this testimony as conclusive, it would seem that the difference between $15,000. and $20,000. might fairly be ascribed to the value of the use and occupation of the premises, rather than to the sales price, as a measure of value at the time of the transfer of title.

The appellants contend, however, that evidence of the sale was too remote, since the price was fixed at the time the option was given. If we assume, without deciding, that sales made more than five years before the date of trial are generally too remote to have any evidentiary value, the full explanation was put before the jury in the instant case, and the weight of the evidence was for them to consider. Rayfield was asked in cross-examination if he knew of the option.

He replied that he had heard there was a contract of sale, but "even in seven years, as I said before, values have not changed much in this area." Even at $15,000., the sale would figure out, as Kolb testified, at "just a bit under $4. a square foot." Other sales, testified to by both Rayfield and Truitt, were below that figure. Truitt testified that he had a record of 6 or 7 sales in the neighborhood that he thought comparable. He testified that $4. a square foot was an adequate valuation, but "I actually don't find anything to substantiate that high a valuation of the land." Even if we assume that the sale was too remote to be reasonably comparable, we cannot find that its admission was prejudicial under the circumstances.

> *Judgment affirmed, costs to be*
> *paid by the appellants.*

PRESCOTT, J., dissenting in part, filed the following dissenting opinion.

I find myself unable to concur completely in the majority opinion of the Court in this case. In dissenting in part, I shall not attempt to set forth fully the reasons, but shall, more or less, outline them.

The case is one of the State Roads Commission taking private property for public use. In evaluating the value of the property taken, certain expert witnesses were called by the Commission, who testified as to their opinion of the value of the property taken. In order to substantiate their opinion testimony, they were interrogated as to "comparable" sales.[1] This is generally recognized as proper provided the sales, in fact, are comparable, and whether they be comparable is in the sound discretion of the trial judge. *Williams v. New York, P. & N. R. Co.,* 153 Md. 102, 108, 137 A. 506. However, this discretion is not unlimited and we have reversed the decision of the trial courts on proper occasions. *Lustine v. State Roads Comm.,* 217 Md. 274, 280, 142 A. 2d 566.

---

1. In this regard, evidence of comparable sales is admissible either as primary evidence of value, or to support the opinion of experts.

It has been held that for such sales to be admissible in evidence the land must be similar and all dissimilarities must be reduced to a minimum. 5 Nichols, *Eminent Domain,* Sec. 21.3. The land must also be proximate in location and the sale proximate in time. 5 Nichols, *op. cit.,* Sec. 21.31.[2]

Bearing in mind the above principles, the Commission offered testimony of four sales of what they claimed to be comparable land for the purpose of buttressing their experts' opinions. Seasonable objections were made to the admissibility thereof. In my opinion, none of the four was comparable, but I shall only consider two which seem to be markedly dissimilar.

The first was a sale of land across the street from the appellants' property and close enough to pass the proximity of time and location tests, but it was zoned *residential* at the time of the sale, while the land taken from the appellant was zoned *commercial.* The reason for the admissibility of this class of evidence is to assist the trier of facts to arrive at the fair market value of the land taken. It does not seem that it should require any elaborate argument as to why the sale of property zoned residential is not comparable to property zoned commercial, and, therefore, is of little, if any, assistance in arriving at the fair market value of land zoned commercial. It is a matter well known to all that almost universally land zoned for commercial use is of greater value than that zoned for residential purposes, and the range of increase amounts, on numerous occasions, to many times the value of the land zoned for residential use. We have had numerous cases bearing out this statement. For instance, see *Congressional School of Aeronautics v. State Roads Comm.,* 218 Md. 236, 146 A. 2d 558, where two experts for the Commission testified that contiguous property zoned residential was of less value than the adjacent land by 50% and 60%, respectively. And in *Marino v. City of Baltimore,* 215 Md. 206, 137 A. 2d 198, there was testimony that if the zoning were changed from residential to commercial, the value would be increased by

---

2. Sec. 21.31 [2] n. 60, lists a number of sales that were admitted as being proximate in time, and a number that were not.

approximately 1000%. I am unable to concur in a holding that the sale of property zoned for residential use is admissible evidence as a comparable sale to similar property zoned for commercial purposes.

The majority opinion states: "Also, it seems inferable from his [Rayfield, the Commission's expert's] testimony that he considered the sales comparable, that he must have taken into consideration the prospect of early rezoning." The sale being considered was from Hearn, the seller, to Holland, the purchaser. Any probative value that the sale would have to establish value of comparable land would lie in what Hearn as the seller was willing to sell property zoned residential for and what Holland as the purchaser was willing to pay, and Rayfield had no means of knowing what was in the minds of either the purchaser or the seller; consequently, it is difficult to see how the above inference can logically be drawn, even if we assume it would change the status of the properties as to being comparable or not.

The other sale (the Milcar or Morgan one) was made seven years before the trial in this case. The Commission's expert, Rayfield, testified the sales price was $15,000 according to the stamps on the deed. The evidence developed that the sales price was in reality $20,000. The purchasers were required to make monthly payments for five years, and, at the expiration thereof, a deed was given and the balance of the purchase price (which was the amount represented by the stamps) was paid. While seasonable objection was made to the evidence of this sale, and it was later established (by the appellant) that the sale was made seven years before the taking in this case, the court overruled a motion to strike the evidence concerning it. The majority of this Court, in sustaining this ruling, holds that the testimony of the sale, though made seven years before the trial, was not prejudicial because the appellant was able to explain the facts relating to it. The reason for the rule that sales too remote in time are inadmissible is that they have little, if any, probative worth as to current value. Although the facts of this sale were explained, it was ruled to be admissible testimony by the trial court upon which the appellee was entitled, and presumably, did argue

its relation to the present value of the property taken, as well as the substantiation it afforded the expert's opinion. From this it would seem to be clearly prejudicial to the appellants' cause.

I also think the objection made to several of the sales that the experts' knowledge of the purchase price was derived entirely from the stamps on the deeds was well taken. The reason for this seems obvious. As stated in *United States v. Katz*, 213 F. 2d 799, 800 (1st Cir. 1954): "More often than not the true consideration paid is not stated in a deed, there appearing only a formal statement of consideration. And the value of the revenue stamps affixed to a deed is determined by the consideration paid exclusive of the value of liens or encumbrances at the time of the sale * * *, so that accurate knowledge of the price paid cannot be calculated from revenue stamps without accurate knowledge of the value of liens and encumbrances on the land at the time of the sale which might or might not appear in the records of the Registry." See also *Nat'l Bk. of Commerce v. City of New Bedford*, 56 N. E. 288, 290 (Mass.); *Denver v. Quick*, 113 P. 2d 999, 1002 (Colo.); 1 Jones, *Evidence*, Sec. 168; 3 Wigmore, *Treatise on Evidence*, 52; 2 Lewis, *Eminent Domain*, Sec. 662; *Central R. Co. of N. J. v. Tax Comm.*, 169 A. 489, 492 (N. J.). And some courts hold that an expert must have personal knowledge of comparable sales. 1 Orgel, *Valuation under Eminent Domain*, Sec. 132, n. 51, Sec. 133, n. 67. Cf. *Patterson v. Mayor & C. C. of Baltimore*, 127 Md. 233, 96 A. 458; *Williams v. New York, P. & N. R. Co.*, 153 Md. 102, 108, 137 A. 506.

I concur in that part of the opinion which states that there was evidence to support the jury's verdict, but there is no way to measure the damage done by what I consider inadmissible and prejudicial testimony; therefore I think the judgment should be reversed and the case remanded for a new trial.